IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MARIE PETERSON, Special Administrator of the Estates of Jane Ann McGrath, deceased, and Molly Morgan, deceased, et al, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 06-3084 |
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**OPINION**

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Pending before the Court is Plaintiffs Steven and Gayla Walters' Motion for Sanctions (d/e 244). The instant case arises out of a collision between a Union Pacific freight train and a passenger vehicle that occurred on July 22, 2004, at the Cisco Road railroad crossing in Macoupin County, Illinois. For the reasons set forth below, the Motion is allowed, in part, and denied, in part.

BACKGROUND

The Cisco Road crossing is equipped with electronic warning signals. Plaintiffs' instant motion asserts that Defendant has concealed or

destroyed vital evidence regarding the operation of these warning signals. On March 25, 2005, Plaintiffs served various requests to produce on Defendant. Response to Motion for Sanctions (d/e 257), Ex. E, Walters Plaintiffs' Request for Production. Plaintiffs assert that Defendant's responses to Requests for Production Nos. 6, 13, and 20 were false and/or misleading and, as a result, they contend that sanctions are appropriate under Fed. R. Civ. P. 37.

> Plaintiffs' Request for Production No. 6 provides as follows:
>
> Produce a complete, legible copy of signal circuit plans depicting the layout of the crossing and crossing related circuitry as it was in service at the time of the subject accident. Such signal circuit plans must include all circuitry out to and including the outermost end of the approach circuit (i.e. – insulated joints or termination shunts) in both directions along the track.

Response to Motion for Sanctions (d/e 257), Ex. E, Walters Plaintiffs' Request for Production, ¶ 6. Defendant responded by producing three pages of plans, numbered 003 to 006. Plaintiffs' Request for Production No. 13 provides as follows:

> If data is periodically or regularly transmitted from the subject crossing to an external computer for purposes of remote testing, archiving, or analysis, produce a complete, unedited copy of all such data (either in printer or computer data form) either transmitted to or received from the subject crossing for a period of two (2) years prior to the date of the subject accident.

Id., Ex. E, Walters Plaintiffs' Request for Production, ¶ 13. Defendant responded "None available, as no such connection was maintained." Motion for Sanctions, p. 2. Plaintiffs' Request for Production No. 20 provides as follows: "Produce a clean, legible copy of all documents present inside the crossing control case at the time of the accident, including but not limited to battery records, ground test records, equipment manuals, and motion sensor/predictor readings." Response to Motion for Sanctions, Ex. E, Walters Plaintiffs' Request for Production, ¶ 20. Defendant responded as follows: "Attached hereto, and numbered 01399 through 01400 is the storage battery record which was inside the control case at the time of the accident. The other information requested was not." Motion for Sanctions, p. 2.

On August 17, 2007, Plaintiffs deposed Paul Stanek, the Director of Signal Maintenance for Defendant. Stanek testified that the Code of Federal Regulations requires railroads to maintain a current set of plans for each crossing at the crossing. Motion for Sanctions, Ex. 1, Deposition of Paul Stanek (Stanek Dep.), p. 37-38.[1] After reviewing the plans that were

---

[1] Because the page numbers within the transcription of the Stanek Deposition encompass two actual pages as the document is filed, the Court will reference the page numbers as assigned by the electronic filing system.

provided in response to Request for Production No. 6, Stanek testified that the plans showed the presence of a data recorder interface module. Stanek was also asked to review "trouble tickets" for the Cisco Road crossing, which had been tendered in discovery in December 2004. He testified that a trouble ticket dated August 31, 2003 indicated that a ScadaNET CRTU (Cellular Remote Terminal Unit) from the crossing had not sent data to Omaha for six days. Id., p. 109. Stanek described the CRTU as follows: "a unit that sends information at -- at the time, it was experimental. It just sends information to the -- the condition of -- of certain parameters in the case and -- and it should call in automatically. If it doesn't, then it sends out a note that there might be something wrong with the recording device itself." Id. When questioned about his characterization of the CRTU as "experimental," Stanek clarified, stating that the CRTU was "a new piece of equipment that we had not used before." Id., p. 111. Stanek later described the CRTU as a "general, non-vital recording device." Id., p. 161. Stanek admitted that the State of Illinois requires Union Pacific to put a CRTU at every crossing, but noted that it was not a "fail safe" system, meaning that if the recorder goes down, "it's not going to affect the crossing." Id.

Stanek was again presented with the circuitry plans that were provided in response to Request for Production No. 6. He testified that these plans did not show the CRTU. Stanek Dep., p. 137. Stanek was also presented with a photograph of the inside of the bungalow, or crossing control case, from the Cisco Road crossing. The picture depicted plans rolled-up in the bungalow. Stanek testified that from the photo, it appeared that the plans in the bungalow had markings that were not contained on the plans provided in response to Request for Production No. 6, specifically "two little squares." Id., p. 143-45.

A. Request for Production No. 6

Plaintiffs assert that Defendant's response to Request for Production No. 6 was false and misleading. Plaintiffs contend that the documents represented to be complete legible copies of signal circuit plans were not the plans in the crossing control case at the time of the collision, relying on Stanek's testimony that the plans in the bungalow had markings that were not contained on the plans provided in response to Request for Production No. 6. This argument is unpersuasive. Request for Production No. 6 sought a complete, legible copy of signal circuit plans depicting the layout of the crossing and crossing related circuitry as it was in service at the time

of the subject accident. There is nothing in the request that would require Defendant to produce the plans that were actually in the control case.

Plaintiffs further assert that the plans that they received in response to Request for Production No. 6 were not complete because they did not identify the existence of the CRTU. Request for Production No. 6 sought "signal circuit plans depicting the layout of the crossing and crossing related circuitry." Plaintiffs assert that this clearly encompasses all circuitry present at the crossing. However, the request is expressly limited to "signal circuit plans." Defendant has produced a letter from the Illinois Commerce Commission Transportation Division/Rail Safety Section that states that the Commission recognizes that remote monitoring devises are not components of the crossing signal safety system as defined by federal regulations because their malfunction would not affect the actual operation of the signal system. Response to Motion for Sanctions, Ex. A. Plaintiffs have failed to show that, in order to be complete, signal circuit plans must include a CRTU if one is present. Thus, Plaintiffs' Motion for Sanctions is denied as it relates to Request for Production No. 6.

B. Request for Production No. 13

Plaintiffs contend that Defendant's response to Request for Production No. 13 was at best misleading because it failed to disclose that

data was being transmitted to Omaha by the CRTU. Defendant responds that Request for Production No. 13 was not an interrogatory, but rather sought documents, and further that it did not specifically identify the CRTU. Plaintiffs need not specifically identify the CRTU. Request for Production No. 13 sought data that had been transmitted from the crossing to an external computer for purposes of remote testing, archiving, or analysis. If such data transmitted by the CRTU exists in printed or computer form, Defendant must produce it. The fact that Defendant had previously disclosed the existence of the CRTU by producing a trouble ticket relating to it is irrelevant[2]; Defendant does not assert that Request for Production No. 13 is overbroad or vague such that it would be necessary to specifically identify the CRTU. Similarly, Defendant's argument that the CRTU's transmittals were neither regular nor periodic is unpersuasive. Defendant concedes that "the CRTU places a telephone call periodically to signal that it is functioning, and to report the voltage of the system" and further that the CRTU would also report "in the event it detected power off/on, battery low, or flashers operating for more than 30 minutes." Response to Motion for Sanctions, p. 4. This falls within the scope of periodic transmission.

---

[2] The Court believes the CRTU trouble ticket provided by Defendant in discovery negates Plaintiffs' argument that Defendant was intentionally hiding the existence of the CRTU from Plaintiffs.

Finally, it is irrelevant that Defendant has produced the signal circuit board from the crossing, which Defendant characterizes as "the best evidence of the functioning of the crossing at the time of the accident." Id.  If additional evidence within the scope of Request for Production No. 13 exists, it is relevant, and Plaintiffs are entitled to view it.  Thus, Plaintiffs' Motion is allowed to the extent that Defendant is ordered to produce a complete, unedited copy of data that was periodically or regularly transmitted from the CRTU to an external computer for a period of two years prior to the date of the subject accident or to respond in compliance with Fed. R. Civ. P. 34(b) that no such data exists.

      C.  Request for Production No. 20

Plaintiffs assert that Defendant's response to Request for Production No. 20 was false.  It is clear from the record that Defendant's response is at least incomplete.  Request for Production No. 20 sought "a clean, legible copy of all documents present inside the crossing control case at the time of the accident, including but not limited to battery records, ground test records, equipment manuals, and motion sensor/predictor readings."  Based on Stanek's testimony, it is clear from photographs that there were plans in the bungalow that were not turned over.  Defendant asserts that it did not need to produce these plans because it already produced the plans

in response to Request for Production No. 6. The record reveals that the documents that were produced in response to Request for Production No. 6 are not exactly the same as those that are shown to have been in the bungalow at the time of the collision. See Stanek Dep., p. 143-45. Request for Production No. 20 is not vague, and it clearly states that it seeks all documents present inside the crossing control case at the time of the collision including, but not limited to, certain expressly identified documents. Defendant failed to comply. Thus, Plaintiffs' Motion is allowed to the extent that Defendant is directed to produce a clean, legible copy of all documents present inside the crossing control case at the time of the accident.

D. Sanctions

Plaintiffs seek various sanctions as a result of what they characterize to be Defendant's "deliberate course of conduct intended to deceive plaintiffs by hiding from them the existence of the CRTU and the data produced by that unit." Motion for Sanctions, p. 7, 9-10. As set forth above, the record reveals omissions in Defendant's responses to Plaintiffs' requests to produce. However, it is unclear at this point whether any of the omissions were material. Thus, the Court declines to impose sanctions at this time. Plaintiffs, however, are granted leave to renew their request, if

after reviewing the supplemental discovery, they can demonstrate that the omissions were material or done knowingly.

The Court also declines, in its discretion, to award attorney's fees in connection with the instant motion. Under Fed. R. Crim. P. 37(a)(4)(c), when a Rule 37 Motion is allowed, in part, and denied, in part, the Court "may, after affording opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." Given the circumstances of the instant case and the disposition of the pending Motion, the Court finds that an award of attorney's fees is not appropriate.

E. State Law Claims

Plaintiffs seek leave to amend their complaint to add state law claims for spoilation of evidence and obstruction of justice. At this point, there has been no showing that the evidence that was withheld was material or that any evidence was destroyed. Plaintiffs' request to add claims for spoilation of evidence and obstruction of justice is denied without prejudice. Plaintiffs may renew this request if it becomes appropriate under the circumstances of the case after the supplemental discovery is tendered.

THEREFORE, Plaintiffs Steven and Gayla Walters' Motion for Sanctions (d/e 244) is ALLOWED, in part, and DENIED, in part, as set forth above.  Defendant is directed to provide the supplemental discovery required under this order on or before November 30, 2007.

IT IS THEREFORE SO ORDERED.

ENTER:   November 13, 2007

       FOR THE COURT:

                             s/ Byron G. Cudmore
                             _____
                             BYRON G. CUDMORE
                         UNITED STATE MAGISTRATE JUDGE