IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MARIE PETERSON, Special Administrator of the Estates of Jane Ann McGrath, deceased, and Molly Morgan, deceased, et al, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 06-3084 |
| UNION PACIFIC RAILROAD COMPANY, ) ) ) ) | |
| Defendant. ) | |

## OPINION

BYRON G. CUDMORE, U.S. Magistrate Judge:

Pending before the Court is Plaintiffs' Motion to Compel Additional Discovery and Motion for Sanctions (d/e 284) (Motion to Compel Additional Discovery). This case arises out of a collision between a Union Pacific freight train and a passenger vehicle that occurred on July 22, 2004, at the Cisco Road railroad crossing in Macoupin County, Illinois. Plaintiffs assert that the electronic warning signals at the crossing were not working at the time of the accident. In the instant Motion, Plaintiffs seek additional discovery, as well as an evidentiary hearing and discovery sanctions

against Defendant Union Pacific Railroad Company. The matter has been fully briefed, and the Court finds no need for an evidentiary hearing on the pending Motion. For the reasons set forth below, the request to compel additional discovery is denied, as is Plaintiffs' request for sanctions. Plaintiffs are granted until May 12, 2008 to address whether an award of expenses in favor of Defendant is appropriate under Federal Rule of Civil Procedure 37(a)(5)(B).

The background of this litigation has been set out by this Court in prior orders and will not be restated here. The Court has broad discretion when reviewing a discovery dispute and "should independently determine the proper course of discovery based upon the arguments of the parties." Gile v. United Airlines Inc., 95 F.3d 492, 496 (7th Cir. 1996). The Court notes that oral fact discovery closed on August 15, 2007, and written fact discovery closed on March 1, 2008. Plaintiffs' instant Motion, filed March 12, 2008, seeks leave to conduct additional discovery based on alleged discovery abuses by Defendant. The instant Motion states that it is being made pursuant to Federal Rule of Civil Procedure 37. According to Plaintiffs, there are three potential sources of electronic data relating to the

functioning of the crossing signal system on the night of the accident: (1) a Cellular Remote Terminal Unit (CRTU) which transmitted data to Union Pacific facilities in Omaha, (2) the original electronic download of data from a recorder board performed the night of the accident, and (3) the data maintained on the recorder board that was removed from the crossing on the night of the accident. The instant Motion alleges that Defendant has engaged in spoilation or concealment of data from these sources. As a result of Defendant's alleged discovery abuses, Plaintiffs seek additional depositions and an order compelling production of electronic data and signal plans. The Court addresses each data source in turn.

    A. CRTU

Plaintiffs assert that Defendant has continuously tried to hide relevant CRTU evidence, including evidence of the CRTU's existence. The Court has previously rejected the assertion that Defendant was intentionally hiding the existence of the CRTU from Plaintiffs during discovery. <u>Opinion (d/e 263), dated November 13, 2007</u>, p. 7, n. 2. Plaintiffs have presented no evidence in connection with the instant Motion to alter this conclusion. In prior orders, the Court deemed relevant, and discoverable, data that was periodically or regularly transmitted from the CRTU to an external computer

for a period of two years prior to the date of the subject accident, as well as documents concerning the installation of the CRTU. <u>Opinion, dated November 13, 2007</u>, p. 8; <u>Opinion (d/e 277), dated February 11, 2008</u>, p. 7-8. According to Plaintiffs, following this Court's <u>Opinion, dated November 13, 2007</u>, Defendant produced a thirteen page readout from the CRTU. <u>See</u> <u>Motion to Compel</u>, Ex. B. According to Plaintiffs, this printout contains abbreviations, codes and symbols that are meaningless to Plaintiffs without explanation by Defendant. However, in spite of this limitation, Plaintiffs claim to have ascertained that the CRTU at issue in the instant case was programmed to transmit only innocuous information. Plaintiffs do not assert any deficiency arising out of Defendant's response as it related to documents concerning the installation of the CRTU.

This Court's <u>Opinion, dated November 13, 2007</u> addressed a Motion for Sanctions (d/e 244) filed by the Walters Plaintiffs. In their Motion for Sanctions, the Walters sought, among other sanctions, an order reopening discovery on the CRTU issue and allowing supplemental depositions of Defendant employees and representatives on issues relating to the CRTU. The undersigned declined to impose the requested sanctions because the Walters had not established that Defendants' omissions were material.

The undersigned expressly allowed the Walters to renew their request for additional discovery if, after reviewing the supplemental discovery, the Walters could demonstrate that the omissions were material or done knowingly.  Opinion, dated November 13, 2007, p. 9-10.  The Walters objected to this decision.  United States District Judge Jeanne E. Scott overruled their objection in an Opinion (d/e 282), dated March 5, 2008.  Plaintiffs now seek an order compelling Defendant to produce for deposition a designee pursuant to Federal Rule of Civil Procedure 30(b)(6) who can fully explain the following seven areas: (1) what the CRTU could have monitored if programmed correctly; (2) what the particular CRTU was programmed to monitor; (3) why the CRTU was programed this way; (4) under what circumstances was the CRTU programmed to provide alarms or notifications; (5) what the printout means; (6) whether Defendant has programmed other CRTU's in Illinois to circumvent Illinois Commerce Commission regulations; and (7) whether a reduction in workforce is the reason Defendant has programmed the CRTU to monitor only innocuous information.

    The Court turns first to the issue of the printout.  This Court compelled the production of the printout as a response to the Walters'

request for production of data that had been transmitted to external computers.  Opinion, dated November 13, 2007, p. 7-8.  Under Federal Rule of Civil Procedure 34(b)(2)(E), Defendant was required to produce the data either in the form in which it is maintained or in a reasonably usable form.  Nothing in the record indicates that Defendant failed to comply with Rule 34(b)(2)(E).  Plaintiffs assert that the printout contains abbreviations, codes and symbols that are meaningless to Plaintiffs without explanation by Defendant.  Plaintiffs, however, have been in receipt of the printout since late November 2007.  Plaintiffs, nevertheless, did not file a request for additional discovery on this issue until March 12, 2008, after the close of discovery and six days after Defendant filed a Motion for Summary Judgment (d/e 283).  The applicable Amended Scheduling Order (d/e 143) requires motions relating to discovery to be pursued in a diligent and timely manner and within sixty days following the event that is the subject of the motion.  Plaintiffs did not pursue this issue in a timely manner, and the Court will not order Defendant to produce a Rule 30(b)(6) designee to explain the printout.

   The remaining areas raised by Plaintiffs relating to the CRTU deal with its programming.  Plaintiffs assert that the CRTU was programmed to

report nothing more than innocuous information.  Specifically, Plaintiffs contend that the CRTU was programed only to report when the backup battery was running low, despite the fact that it could have been programed to report other shortcomings.  Plaintiffs rely on Illinois Commerce Commission Order T00-0095, which requires the installation of remote monitoring devices at signalized public crossings.  <u>Motion to Compel</u>, Ex. A.  Under Order T00-0095, the devices must report extended commercial power failures, high/low standby battery voltage limits, suspect gate operations, and excess warning operation.  <u>Id</u>.  Defendant has produced uncontroverted evidence that the CRTU at issue in the instant case was designed to monitor extended commercial power failures, high/low standby battery voltage limits, and excess warning operation.  <u>Response in Opposition to Motion to Compel Addition Discovery and Motion for Sanctions, and Defendant's Counter-Motion for Sanctions (d/e 291) (Defendant's Opposition)</u>, Ex. A.  It is also uncontroverted that the Cisco Road crossing did not have gates.  <u>Id</u>.  Thus, Plaintiffs fail to show that the CRTU should have been programmed to monitor suspect gate operations at the Cisco Road crossing or that the programming of the CRTU is material.  Moreover, the Court again finds that Plaintiffs <u>failed</u> to diligently

pursue the requested information. Plaintiffs fail to demonstrate the need for additional discovery relating to the programming of the CRTU at this late stage of the proceedings. Thus, Plaintiffs' request for additional discovery relating to the CRTU is denied.

B. Original Download of Data from the Recorder Board

It is undisputed that, on the night of the collision, Jim Frawley, an electronic signal technician for the Defendant, accessed and downloaded data from a recorder board at the crossing to his laptop computer. Defendant has presented an affidavit from Frawley, along with a copy of the printout of the data that Frawley downloaded on the night of the accident. <u>Defendant's Opposition</u>, Ex. D. The printout of the data download indicates that there were 2851 events recorded, but that printing started with event 2000. <u>Id</u>., p. 3. The printout includes data beginning on 07/07 at 3:35:33 p.m. and ending on 07/22 at 9:56:53 p.m. <u>Id</u>., p. 3-4. Plaintiffs assert that Defendant has refused access to and destroyed evidence of the electronic copy of the original download of data from the recorder board located at the crossing. As a result, Plaintiffs seek to depose a Rule 30(b)(6) designee (1) to conduct a complete download of the event recorder at the crossing and (2) to explain why a complete

download was not obtained by Defendant on the night of the accident. Plaintiffs also seek an electronic copy of a partial download similar to what Defendant obtained on the night of the accident.

With respect to the refusal of access, Plaintiffs assert that Defendant refused to turn over the downloaded data to the Illinois Commerce Commission during its investigation of the collision. It is clear from the record that the Illinois Commerce Commission inspector reviewed all of the data that Frawley downloaded from the crossing board. Defendant's Opposition, Ex. D, p. 2. Frawley avers that, at no time prior to this review, did he alter, amend, or edit the data in any way. Id. In a letter dated July 28, 2005, the Illinois Commerce Commission informed Plaintiffs' counsel Sims that, following the inspector's review, the Illinois Commerce Commission did not pursue a copy of the download. Defendant's Opposition, Ex. C. Defendants' failure to turn over downloaded data to the Illinois Commerce Commission during its investigation of the collision provides no basis for additional discovery at this point in the litigation.

Plaintiffs further assert that Defendant tampered with the downloaded data that was produced in discovery. On January 17, 2006, Defendant produced the printout beginning on 07/07 at 3:35:33 p.m. and ending on

07/22 at 9:56:53 p.m.  <u>Defendant's Opposition</u>, Ex. D, p. 3-4.  According to Plaintiffs, this document contains a blank space, prior to the first entry, where none should be located.  Plaintiffs characterize this as "extra line feed" and assert that it indicates that the file necessarily had been saved from a text editor.  The existence of extra line feed was highlighted in Plaintiffs' expert Wilfred Farnham's report dated October 4, 2007.  Plaintiffs fail to explain why they did not pursue the issue in a more timely manner prior to the close of discovery.  Furthermore, Plaintiffs rely solely on Farnham's report to support their contention that the extra line feed provides evidence of tampering.  As Judge Scott noted in an Opinion (d/e 295), dated April 9, 2008, Farnham fails to identify sufficient evidence to support a finding that the existence of extra empty lines indicates that the download was edited.  <u>Id</u>., p. 8-9.  The extra line feed does not provide a basis for additional discovery at this stage of the litigation.

   Plaintiffs further assert that Defendant failed to provide them with a complete paper copy of the data download that was taken on the night of the accident and that the electronic file of the download produced in discovery has been altered.  As previously noted, Defendant initially produced a printout beginning on 07/07 at 3:35:33 p.m. and ending on

07/22 at 9:56:53 p.m.  <u>Defendant's Opposition</u>, Ex. D, p. 3-4.  In May 2007, Plaintiffs requested a complete data download.  According to Plaintiffs, Defendant subsequently produced another partial paper copy of the download, this one running from 06/01 at 2:14:22 p.m. to 07/08 at 6:16:13 p.m.  <u>Motion to Compel</u>, Ex. F.  Plaintiffs concede, however, that, when the two paper copies were pieced together, they constituted "one full set of data from the download."  <u>Motion to Compel</u>, p. 7.  Plaintiffs base their contention that the electronic file has been altered on the fact that the properties tab of the disk indicates that the file was created at 8:04 p.m. on July 22, 2004, while the file purports to contain data generated at 9:56 p.m. on July 22, 2004.  The Court notes that the face of the data printout indicates a time/date of 22-JUL-2004 10:04 p.m.  Defendant has produced evidence that the property tab of the disk actually indicates that the file was created at 9:04 p.m.  <u>Defendant's Opposition</u>, Ex. I.  Defendant has also produced evidence that the time listed on the face of the printout is generated by the signal system's internal clock, while the time on the disk's property tab is generated by the internal clock of the computer to which the data was downloaded.  <u>Id</u>.  On the record before this Court, Plaintiffs have failed to establish that the data produced in discovery has been altered.

Plaintiffs have also failed to establish the need for additional discovery at this late stage of the litigation relating to the procedures used in obtaining the download on the night of the collision. Plaintiffs' request for additional discovery on these issues is denied.

    C.  The Recorder Board

Plaintiffs contend that data on the recorder board that was removed from the crossing on the night of the accident has been concealed, altered, and corrupted by Defendant. Specifically, Plaintiffs assert that, on December 6, 2007, while examining the recorder board, they discovered forty-nine lines of new data recorded after the date of the accident. Plaintiffs have submitted a printout, which shows additional lines of data at the end for a period from 6/13 at 2:02:00 p.m. to 6/13 2:38:56 p.m., as well as power on/off readings from 12/5 and 12/6. Motion to Compel, Ex. G. Unlike the printout produced in discovery, which begins at 2:14:22 p.m. on 6/01, the printout from December 6, 2007 begins at 3:41:55 p.m. on 6/01. Compare id.; Motion to Compel, Ex. F. The record reveals that the recorder board has a limited memory capacity, and as new events are recorded, the oldest data is removed from its memory.

According to Plaintiffs, it is obvious from this new data that the data on the recorder board had been unilaterally modified by Defendant without prior notice to Plaintiffs.  On January 31, 2008, Plaintiffs served Defendant with supplemental interrogatories which related in part to this new data. Defendant responded on March 3, 2008.  <u>Defendant's Opposition</u>, Ex. J. Defendant explains that, on June 13, 2007, the recorder board was taken to an active crossing and plugged in order to obtain data prior to July 7, 2004 in response to supplemental interrogatories and requests to produce served by Plaintiffs on May 22, 2007.  <u>Id</u>., p. 3-4.  According to Defendant, when the recorder board was plugged into the active crossing, it began to operate as designed and recorded events that occurred while it was plugged in, specifically the forty-nine new lines of data.  <u>Id</u>., p. 4. Defendant has identified the active crossing that was used and has stated that Mike Rodriguez and Mike Dundas were present when the new data was added.  <u>Id</u>.

Plaintiffs seek an order compelling production of the signal plans for the crossing used on June 13, 2007.  Plaintiffs also wish to depose the individuals involved in the June 13, 2007 activity to verify what information was sought, how it was obtained, and why it was obtained in the manner in

which it was obtained. Plaintiffs, however, fail to show that this information is material. The data that was erased involved an approximately one and a half hour time frame on June 1, 2004, over six weeks prior to the accident at issue. Defendants produced a printout copy of this data to Plaintiffs during discovery, and as set forth above, there is no evidence that the printout has been altered by Defendant. Therefore, Plaintiffs' request for additional discovery on this issue is not warranted at this late stage of the proceedings. Thus, the Motion to Compel is denied in all respects.

   D.  Sanctions

Plaintiffs have failed to establish any basis for discovery sanctions against Defendant. Defendant requests an award of its expenses in opposing the instant Motion. Pursuant to Federal Rule of Civil Procedure 37(a)(5)(B), when a Rule 37 motion is denied, the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees" unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Plaintiffs are granted until May 12, 2008 to demonstrate that their Motion to Compel was substantially justified

or that other circumstances exist that would make an award of expenses unjust. The Court will defer ruling on Defendant's request for expenses until after that date.

THEREFORE, Plaintiffs' Motion to Compel Additional Discovery and Motion for Sanctions (d/e 284) is DENIED. Plaintiffs are granted until May 12, 2008 to demonstrate that their Motion to Compel was substantially justified or that other circumstances exist that would make an award of expenses unjust.

IT IS THEREFORE SO ORDERED.

ENTER:   May 1, 2008

        FOR THE COURT:

*s/ Byron G. Cudmore*
_____
BYRON G. CUDMORE
UNITED STATE MAGISTRATE JUDGE