# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MARIE PETERSEN n/k/a | ) | |
| MARIE CIMAGLIA, Special | ) | |
| Administrator of the Estate of | ) | |
| Jane Ann McGrath, deceased, and | ) | |
| Molly Morgan, deceased minor; | ) | |
| JON PETERSEN as next friend | ) | |
| of Katie Petersen, a minor, | ) | |
| STEVEN M. WALTERS | ) | |
| and GAYLA J. WALTERS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  06-3084 |
| | ) | |
| UNION PACIFIC RAILROAD | ) | |
| COMPANY, a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Union Pacific Railroad Company's (Union Pacific) Motion for Summary Judgment (d/e 283) (Motion).  The Plaintiffs seek to recover for personal injuries and deaths that resulted from the collision (Collision) of an automobile and a Union Pacific freight train at the Cisco Steel Road grade crossing (Crossing)

in Carlinville, Macoupin County, Illinois.  For the reasons set forth below, the Motion is allowed in part.  Union Pacific has requested oral argument on the Motion.  The request is denied because the Court has determined that oral argument is not necessary.  Issues of fact exist regarding whether: (1) the warning lights and warning bells at the Crossing (Warning System) activated at the time of the Collision; (2) the Warning System was malfunctioning, due to a problem defined in the federal regulations as Activation Failures, and whether Union Pacific had a duty under federal regulations to take additional steps to warn automotive traffic of oncoming trains at the Crossing.  The conflicting evidence on these points preclude summary judgment.  Union Pacific is also entitled to partial summary judgment because no issues of fact exist with respect to the Plaintiffs' other theories of negligence.  Fed. R. Civ. P. 56(d)(1).

## STATEMENT OF FACTS

The Crossing is a grade crossing in Carlinville, Illinois, where a single Union Pacific railroad track crosses Cisco Steel Road.  The Union Pacific track runs north and south, and Cisco Steel Road runs east and west. University Street runs parallel to the track on the east side of the track.  The intersection of Cisco Steel Road and University Street is about 20 feet east

of the Crossing.   <u>Motion</u>, Exhibit B, <u>Affidavit of David Brunnworth</u>, attached <u>Traffic Crash Reconstruction Report (Reconstruction Report)</u>, at 4.

The Warning System installed at the Crossing consisted of cross-buck warning signs with flashing warning lights and warning bells.  The Warning System was designed so that the lights would flash and the bells would sound when a train approached the Crossing.  The flashing lights were designed and placed in such a way that they could be seen by drivers on University Street as well as Cisco Steel Road.  There were no gates.

In 1979, the United States Department of Transportation Federal Highway Administration (FHWA) authorized the construction of the Warning System at the Crossing.  <u>Motion</u>, Collective Exhibit H, <u>Illinois Department of Transportation Record of Construction of Warning System (IDOT Record)</u>, at 165.  In 1982, the Illinois Central Gulf Railroad entered into a contract with Illinois Department of Transportation to install the Warning System at the Crossing.   In 1983, the Illinois Commerce Commission (Commission) reviewed the plans for the Warning System and authorized its construction.  Installation was complete in August 1983.  Ninety percent of the cost of the construction system was reimbursed with

federal funds from the FHWA.  <u>IDOT Record</u>, at 1.  Thereafter, Union Pacific acquired the track and the Warning System.  In 2004, Union Pacific operated the Warning System at the Crossing.

The Collision occurred on July 22, 2004, some time between 6:03 p.m. and 6:08 p.m.  At that time, the sun was bright and near the horizon, the visibility was clear, and the pavement was dry.  The view to the south down the track from the Crossing was unobstructed.  <u>Reconstruction Report)</u>, at 4.

A third party witness, Kimberly Maguire, gave a statement to law enforcement officials in which she said that she drove through the Crossing at approximately 6:00 p.m. that evening.  She was traveling east on Cisco Steel Road.  She saw a train approaching as she was in the Crossing on the track; however, she stated that the warning lights were not flashing, the bells were not sounding, and she could not hear the train's horn sounding.  <u>Response to Defendant's Motion for Summary Judgment (d/e 292) (Response)</u>, Exhibit 9, <u>Deposition of Kimberly Maguire</u>, Deposition Exhibit 1, <u>Maguire Statement</u>; <u>Motion</u>, Exhibit A, <u>Affidavit of Paul Bouldin</u>, attached <u>Macoupin County Sheriff's Dept. Report (Sheriff's Report)</u>, at 5.  After she went through the Crossing, she turned onto University Street.  As

she turned onto University, she saw two vehicles traveling in the opposite direction pass her and head toward the Crossing.  She looked back and did not see the warning lights flashing.  Maguire Statement.

Shortly after 6:00 p.m. that day, Plaintiff Steven M. Walters, drove a 1999 Oldsmobile Silhouette minivan (Minivan), north on University Street, turned left onto Cisco Steel Road and traveled twenty feet west into the Crossing.  Walters' wife, Gayla Walters, was in the front passenger seat. Jane Ann McGrath and Molly Morgan were in the two middle seats in the Minivan, and Katie Petersen was in the rear seat.  Reconstruction Report, at 2-3.

Steven Walters testified at his deposition that the Crossing was rough so he slowed down to cross as smoothly as possible.  Response, Exhibit 1, Deposition of Steven Walters (Walters Deposition), at 105.  As Walters drove the Minivan into the Crossing, a northbound Union Pacific freight train (Train) was approaching the Crossing from the south.  The Train was traveling approximately 43 miles per hour.  Motion, at 6, Statement of Undisputed Facts, ¶ 37; Response, at 1, ¶ I.A. Facts Conceded to be Undisputed.  The regulations authorized freight trains to travel at speeds of up to 60 miles per hour for the classification of the track at the Crossing.

Motion, Exhibit F, <u>Manager's Report of Highway-Rail Grade Crossing</u> <u>Accident</u> (track was class 4 track); 49 C.F.R. § 231.9. Passenger trains were authorized to travel up to 80 miles per hour through the Crossing. 49 C.F.R. § 213.9. The engineer on the Train started sounding the Train's horn at the whistle post and continued to sound the horn until the freight Train entered the Crossing. <u>Motion</u>, at 4, <u>Statement of Undisputed Fact</u>, ¶ 14; <u>Response</u>, at 1, ¶ I.A. <u>Facts Conceded to be Undisputed</u>.

Steven Walters turned his head to look both ways as he approached the Crossing. <u>Walters Deposition</u>, at 105. He did not see the Train until he was already on the track. He agreed in his deposition, however, that if he had looked to the south he would have seen the Train approaching. <u>Walters Deposition</u>, at 172. Once he saw the Train, it was too late; the Train collided with the Minivan. As a result of the Collision, Jane Anne McGrath and Molly Morgan were killed, and Steven M. Walters, Katie Petersen, and Gayla J. Walters were injured.

The Sheriff's Report of the Collision indicated that Steven Walters did not remember whether the Warning System lights were flashing before he entered the Crossing. <u>Sheriff's Report</u>, at 4. Walters testified at his deposition that the Warning System lights were not flashing before he

6

entered the Crossing. <u>Walters Deposition</u>, at 129. The conductor and fireman on the Train, however, both testified in their depositions that the Warning System lights were flashing as the Train approached the Crossing. <u>Motion</u>, Exhibit C, <u>Deposition of Keith Hall</u>, at 48-50; and Exhibit D, <u>Deposition of Phillip Kennedy</u>, at 62-64.

The Warning System also contained an event data recorder (Event Recorder) that kept a record of its operations. The Event Recorder indicated that the Warning System lights and bells were activated for 30 seconds before the Train entered the Crossing. The Event Recorder also showed that no other train had gone through the Crossing for at least an hour before the Collision occurred. <u>Motion</u>, Exhibit K, <u>Deposition of Harry Hibschman</u>, at 111-12; and Exhibit E, <u>Event Recorder Data download dated July 22, 2004, at 10:04 p.m.</u>

Federal regulations required the Warning System to activate at least 20 seconds before a train entered the Crossing:

§ 234.225 Activation of warning system.

A highway-rail grade crossing warning system shall be maintained to activate in accordance with the design of the warning system, but in no event shall it provide less than 20 seconds warning time for the normal operation of through trains before the grade crossing is occupied by rail traffic.

49 C.F.R. § 234.225.  The failure to activate as required by § 234.225 was considered an "Activation Failure".  49 C.F.R. § 234.225.  If a warning system malfunctioned, and the malfunction involved an Activation Failure, the regulations required additional steps to warn automotive traffic:

§ 234.105 Activation failure.

Upon receipt of a credible report of warning system malfunction involving an activation failure, a railroad having maintenance responsibility for the warning system shall promptly initiate efforts to warn highway users and railroad employees at the subject crossing by taking the following actions:

(a) Prior to any train's arrival at the crossing, notify the train crew of the report of activation failure and notify any other railroads operating over the crossing;

(b) Notify the law enforcement agency having jurisdiction over the crossing, or railroad police capable of responding and controlling vehicular traffic; and

(c) Provide for alternative means of actively warning highway users of approaching trains, consistent with the following requirements (see Appendix B for a summary chart of alternative means of warning):

(1)   (I) If an appropriately equipped flagger provides warning for each direction of highway traffic, trains may proceed through the crossing at normal speed.

(ii) If at least one uniformed law enforcement officer (including a railroad police officer) provides warning to highway traffic at the crossing, trains may proceed through the crossing at normal speed.

(2)  If an appropriately equipped flagger provides warning for highway traffic, but there is not at least one flagger providing warning for each direction of highway traffic, trains may proceed with caution through the crossing at a speed not exceeding 15 miles per hour.  Normal speed may be resumed after the locomotive has passed through the crossing.

(3) If there is not an appropriately equipped flagger or uniformed law enforcement officer providing warning to highway traffic at the crossing, each train must stop before entering the crossing and permit a crewmember to dismount to flag highway traffic to a stop. The locomotive may then proceed through the crossing, and the flagging crewmember may reboard the locomotive before the remainder of the train proceeds through the crossing.

(d) A locomotive's audible warning device shall be activated in accordance with railroad rules regarding the approach to a grade crossing.

49 C.F.R. § 234.105.

The Event Recorder on the date of the Collision contained data on the trains that had traveled through the Crossing from June 1, 2004, to the time of Collision on July 22, 2004.  A total of 552 trains had entered the Crossing in that period of time, including the Train that was involved in the Collision.  Reply in Support of Motion for Summary Judgment (d/e 304), Exhibit V, Affidavit of Forrest Ballinger (Ballinger Affidavit), ¶ 13.  The data indicated that in 546 of the 551 other crossings before the Collision, the

Warning System activated at least 20 seconds before each such train entered the Crossing.  On four occasions, the Warning System activated 19 seconds before the respective train entered the Crossing.  On one occasion, the Warning System activated 17 seconds before the train entered the Crossing. Id., ¶ 5.

The Plaintiffs' expert Wilfred Farnham opined that these five incidents in which the warning was less than 20 seconds constituted Activation Failures.  Response, Exhibit 21, Report of Wilfred Farnham, at 11.  Union Pacific's expert Forrest Ballinger opined that these five incidents were not Activation Failures because the five trains in question were Amtrak passenger trains that were accelerating as they went through the Crossing. Ballinger opined that the normal operation of through trains referenced in § 234.225 meant trains that traveled through the Crossing at a constant rate of speed.  Id.  He opined that the five incidents did not involve the normal operation through trains because the trains were accelerating.  Reply in Support of Motion for Summary Judgment (d/e 304), Exhibit V, Affidavit of Forrest Ballinger (Ballinger Affidavit), ¶ 11.

Ballinger also explained that the Warning System was designed to warn for trains that went through the Crossing at a constant rate of speed.

He opined that the Warning System did not malfunction in the five incidents because of the acceleration of the trains.  Id., ¶¶ 10-12.

The Plaintiffs responded with the opinions of a third expert, Paul Byrnes.  Surreply to Defendant's Reply Regarding Summary Judgment (d/e 330), Exhibit 35, Affidavit of Paul Byrnes (Byrnes Affidavit).  Byrnes opined that the trains involved in the 5 incidents in which the Warning System activated for less than 20 seconds were part of the normal operation of through trains as defined in § 234.225.  Byrnes relied on the commentary in the Federal Register Notice of the Interim Final Rule that eventually became § 234.225.  Byrnes Affidavit, attached 61 Fed. Reg. 31802 (August 19, 1996).  The Federal Register Notice stated concerning § 234.225:

> This section is being amended to clarify that the 20 second warning time requirement applies to normal through train operations rather than switching movements or train operations that require stopping short of the grade crossing.  A crossing warning system is not designed for those situations in which a switching movement occupies a grade crossing approach circuit or trains stop short of a grade crossing.

61 Fed. Reg. at 31804.  Byrnes opined that the five incidents were normal operations of through trains because the incidents did not involve switching movements of trains stopping short of the Crossing.

11

<u>ANALYSIS</u>

The Plaintiffs brought two actions in state court against Union Pacific. The actions were consolidated and removed to the U.S. District Court for the Northern District of Illinois, and then transferred to this District.  The Plaintiffs alleged that Union Pacific was liable for the deaths and injuries as a result of its negligence.  The Plaintiffs alleged that Union Pacific: (1) failed to keep a proper lookout at or near the Crossing; (2) failed to reduce speed to avoid a collision; (3) failed to maintain the brakes in good and working condition; (4) failed to sound either its whistle or bell; (5) operated the Train at an excessive speed; (6) operated the Train at an excessive speed when it knew that numerous vehicles used the Crossing, which was not equipped with gates; (7) failed to install crossing gates at the Crossing; and (8) failed to maintain and operate the Warning System adequately.  Union Pacific now asks for summary judgment on the Plaintiffs' claims.

At summary judgment, Union Pacific must present evidence that demonstrates the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to the Plaintiffs.  Any doubt as to the existence of a genuine issue for trial must be resolved against

12

Union Pacific.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Once Union Pacific has met its burden, the Plaintiffs must present evidence to show that issues of fact remain with respect to an issue essential to their case, and on which they will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

The Plaintiffs' claims sound in negligence.  To meet their burden at summary judgment, the Plaintiffs must present evidence that: (1) Union Pacific owed the Plaintiffs a duty; (2) Union Pacific breached that duty; (3) the breach was the proximate cause of the Plaintiffs' injuries; and (4) damages.  <u>Malcome v. Toledo, Peoria & Western Ry. Corp.</u>, 349 Ill.App.3d 1005, 1006, 811 N.E.2d 1199, 1201 (Ill.App. 4th Dist., 2004).   The Plaintiffs concede that: (1) Union Pacific employees on the Train kept a proper look out; (2) the Train's brakes were in proper working order; and (3) Union Pacific employees sounded the Train's horn properly to warn drivers at the Crossing.  Union Pacific is thus entitled to partial summary judgment that these material facts are not at issue.  <u>Fed. R. Civ. P.</u> 56(d)(1). The Plaintiffs challenge Union Pacific's request for summary judgment on the remaining theories of negligence.

The Plaintiffs have met their burden with respect to their claim that the Warning System was not operating properly.  Union Pacific had a duty to operate the Warning System to warn drivers adequately to stop for oncoming trains.  <u>Sheahan v. Northeast Illinois Regional Commuter R. Corp.</u>, 212 Ill.App.3d 732, 736, 571 N.E.2d 796, 800 (Ill.App., 1st Dist., 1991).  The FHWA and the Commission authorized the installation of the Warning System at the Crossing, and federal funds were used to reimburse 90 percent of the construction costs.  This regulatory process, and expenditure of federal funds, established that the Warning System was the appropriate means that Union Pacific was required to employ to protect drivers from oncoming trains in order to avoid collisions.  <u>Norfolk Southern Ry. Co. v. Shanklin</u>, 529 U.S. 344, 358-59 (2000).  Union Pacific, thus, had a duty to operate the Warning System properly.

According to Maguire and Steven Walters, Union Pacific breached this duty.  Maguire stated that she went through the Crossing at approximately 6:00 p.m., on the date of the Collision.  She saw a train coming, but the Warning System's lights were not flashing and the bells were not sounding. She looked back after she exited the Crossing and the lights still were not flashing.  The Warning System recorder indicates that no other train came

14

through the Crossing for the hour before the Collision.  Motion, Exhibit E,

Event Recorder Download dated July 22, 2004, at 10:04 p.m. (last train to

enter the Crossing before the Collision occurred at 5:03 p.m.).  A jury could

conclude that Maguire was looking at the Train approach the Crossing.  If

so, then, according to her, the Warning System did not operate properly

immediately before the Collision.

Steven Walters also testified at his deposition that the lights were not

flashing when he entered the Crossing.  Based on the testimony of these two

witnesses, a jury could conclude that Union Pacific breached its duty to

warn drivers at the Crossing of oncoming trains.  Union Pacific presented

evidence that the Warning System functioned properly, but the

contradictory evidence only creates an issue of fact; the contradictory

evidence does not entitle Union Pacific to summary judgment.

The evidence, when viewed in favor of the Plaintiffs, also shows that

the failure of the Warning System to activate properly was the proximate

cause of the collision.  The FHWA and the Commission determined that the

Warning System was the appropriate means to warn drivers of oncoming

trains at the Crossing.  A jury could also conclude that without the flashing

lights and sounding bells, drivers, such as Steven Walters, could not

ascertain that a train was coming in time to avoid a collision.   This conclusion would be supported by the evidence that both Maguire and Walters stated that they entered the Crossing while the Train was approaching, and neither noticed the Train until each was in the Crossing. The fact that both of these drivers did not notice the Train coming would tend to show that drivers at the Crossing needed a properly functioning Warning System to ascertain that a train was coming in time to stop and avoid a collision.   A jury could, thus, conclude that the failure of the Warning System was the proximate cause of the collision.

Union Pacific argues that Walters was bound by his first statement to law enforcement officials that he did not know whether the Warning System lights were flashing.  The case cited by Union Pacific states that an affidavit cannot be used at summary judgment to contradict a prior statement made at a deposition.   Pedersen v. Joliet Park Dist., 136 Ill.App.3d 172, 176, 483 N.E.2d 21, 24 (Ill.App. 3$^d$ Dist., 1985); accord Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532-33 (7th Cir. 1999). Walters' initial statement was not made at a deposition.  Thus, the Plaintiffs can rely on Walters' subsequent deposition testimony to overcome summary judgment.

Union Pacific argues that Maguire was not looking at the Train, but some other train, because she was at the Crossing several minutes before the Collision.  Union Pacific relies on the clock in the Warning System recorder that showed that the Collision occurred at 6:08 p.m.   <u>Hibschman Deposition</u>, at 111-12.  Since Maguire was at the Crossing at about 6:00 p.m., Union Pacific argues that she could not have seen the Train, but must have been mistaken or have seen some other train approaching the Crossing.

The various clocks that recorded the time of the Collision put the time as early as 6:03 p.m. and as late as 6:08 p.m.  <u>See</u> <u>Surreply to Defendant's Reply Regarding Summary Judgment (d/e 330)</u>, at 10-11 and documents cited therein.  Maguire did not know the precise time that she entered the Crossing; she only knew that she was at the Crossing around 6:00 p.m.  She, thus, could have been there shortly after 6:00 p.m. as the Train was approaching the Crossing.  Furthermore, the Warning System recorder also showed that no other train came through the Crossing for the hour before the Collision.  <u>Motion</u>, Exhibit E, <u>Event Recorder Download dated July 22, 2004, at 10:04 p.m.</u>  Drawing all inferences in favor of the Plaintiffs at this time, the Court must conclude, for purposes of summary judgment, that Maguire saw the Train approaching just before the Collision, and the

Warning System lights and bells were not activated as she drove across the Crossing.

Union Pacific also argues that the Warning System recorder data trumps all eye witness testimony at summary judgment.  In support of this claim, Union Pacific cites the Supreme Court's decision in <u>Scott v. Harris</u>, __ U.S. __, 127 S.Ct. 1769 (2007).  The <u>Scott</u> case involved a claim of use of excessive force by police officers in a high speed chase.  The chase was video taped by police officers.  No party disputed the accuracy of the video recording.  <u>Id.</u>, at 1775.  The Supreme Court relied on the tape to conclude that the police did not use excessive force.  In this case, all Plaintiffs dispute the accuracy of the Event Recorder data; thus, the Event Recorder data is not controlling.

Union Pacific finally argues that the Plaintiffs failed to present evidence of proximate cause.  Union Pacific argues that the evidence establishes that Steven Walters' failure to look before entering the Crossing was the proximate cause of the collision.  Union Pacific asserts that it is entitled to summary judgment if the driver breached the duty to look.

Walters had a duty to look.  Whether he breached that duty, and whether that breach was the proximate cause (rather than Union Pacific's

breach of its duty to operate the Warning System properly), is a factual issue for the jury. The cases cited by Union Pacific involve situations in which the railroad warning system worked properly, and the driver saw the warning and consciously decided to try to cross the tracks anyway. Sheahan, 571 N.E.2d at 797 (driver saw the flashing lights and sped up to try to beat the train through the crossing); Hamilton v. Atchison, Topeka & Santa Fe, Ry. Co., 175 Ill.App.3d 758, 530 N.E.268, 269 (Ill.App. 3^d Dist., 1988) (Warning gates were down and lights were flashing, but driver decided to drive onto tracks anyway).[1]  If the jury believes the Plaintiffs' evidence, these cases do not apply. Summary judgment on this theory of liability is denied.

The Court also allows the Plaintiffs to proceed past summary judgment on their theory that Union Pacific breached its duty under 49 C.F.R. §§ 234.225 and 234.105 to slow train traffic or post flaggers due to the malfunctioning of the Warning System. The data from the Event Recorder indicated that Warning System did not activate at least 20 seconds before a train entered the Crossing on five out of 552 occasions,

---

[1]Union Pacific also cites Ferguson v. Toledo, P. & W. R.R., 40 Ill.App.2d 19, 189 N.E.2d 675 (Ill.App. 3rd Dist., 1963). This citation is to an abstract only with no published opinion, and so, has no precedential value.

from June 1 to July 22, 2004.  The parties' experts disagree on whether the Warning System was malfunctioning.  If the Warning System was malfunctioning due to Activation Failures, Union Pacific had a duty to take the steps set forth in § 234.105.  It did not do so.  At this point, the Court must read the facts in the light most favorable to the Plaintiffs.

Union Pacific argues that the five incidents were not Activation Failures because the five trains were Amtrak trains that were accelerating as they went through the Crossing.  The 20 second warning time requirement only applies to "normal operation of through trains."  § 234.225.  The meaning of the phrase "normal operation of through trains" is a legal question.  The experts' opinions are not appropriate.  The Federal Register Notice supports the conclusion that the phrase refers to trains that travel through a grade crossing, rather than: (1) engaging in switching operations at a grade crossing, or (2) stopping short of a grade crossing.  The Court has not been able to find any other authority addressing the meaning of "normal operations of through trains."  Absent some contrary authority, the Court agrees that the five Amtrak trains that accelerated through the Crossing were part of the "normal operations of through trains" since they neither stopped short of the Crossing nor engaged in switching operations at the

Crossing.[2]  As such the failure to activate for at least 20 seconds constituted Activation Failures on those five incidents.  This still leaves the question of whether the Warning System was malfunctioning on the occasion at issue here, in light of the fact that the Amtrak trains were accelerating and that the Warning System operated properly the other 546 times from June 1, 2004, until the Collision on July 22, 2004.

Union Pacific also argues that the prior Activation Failures were irrelevant because the Warning System functioned properly at the time of the Collision.  As discussed above, whether the Warning System functioned properly is an issue of fact.  If the jury concludes that the Warning System activated properly 30 seconds before the Train entered the Crossing, then Union Pacific is correct.  If the Warning System functioned properly at the time of the Collision, then Steven Walters received the warning that the Warning System was designed to give, and such a warning is conclusively presumed to be adequate to meet Union Pacific's obligation to warn drivers such as Walters.  If, however, the jury believes that: (1) the Warning System

---

[2]The Plaintiffs submitted the Federal Register for the first time in the Surreply.  Union Pacific, therefore, may have not had a reasonable opportunity to respond.  The Court gives Union Pacific leave to raise this issue again through a motion in limine if it has some additional authority on the meaning of "normal operation of through trains" in 49 C.F.R. § 234.225.

did not activate before the Collision and (2) Union Pacific had notice that the Warning System was malfunctioning and had a duty under § 234.105 to slow down train traffic or post flaggers at the Crossing, then Union Pacific breached its duty and that failure could have contributed to the Collision. The issue of whether Union Pacific was required to comply with § 234.105 is relevant depending on whether the Warning System operated properly immediately before the Collision.

Union Pacific, however, is entitled to summary judgment on the Plaintiffs' other theories of liability. The Plaintiffs first argue that Union Pacific was required to install gates and other additional safe guards at the Crossing. This argument is preempted by federal law. When the FHWA authorizes the construction of a particular warning system at a railroad crossing, and federal funds are used to pay for the installation, then the warning system so installed is conclusively determined to comply with federal regulations and to be the appropriate warning system for the particular crossing. Shanklin, 529 U.S. at 358-59. That is what occurred here. Union Pacific is thus entitled to summary judgment on this issue.

The Plaintiffs argue that the federal statutes were amended to allow the Plaintiffs to proceed on their claim regarding the adequacy of the

Warning System. The Court disagrees. The 2007 Amendment (Clarifying Amendment) added a Clarifying Amendment that reaffirms that a person injured by a railroad collision may proceed on a claim that a railroad violated federal regulations or its own rules. The Amendment states:

(b) Clarification regarding State law causes of action.--

(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party--

> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;

> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

(2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

49 U.S.C. § 20106(b).

The Clarifying Amendment does not apply to the design of the Warning System because the design did not violate federal regulations. This

was conclusively determined when the FHWA authorized construction and provided federal funds to pay for construction.  Shanklin, 529 U.S. at 358-59.  Since the Warning System as installed did not violate federal regulations, the Clarifying Amendment does not apply.[3]

The Plaintiffs also argue that the Train was going at an excessive speed for the conditions at the Crossing.  Absent some special conditions defined in federal regulations, claims of excessive speed in this case are also preempted.[4]  Federal regulations set speed limits for classes of track.  In this case, the speed limit was 60 miles per hour for freight trains.  As long as the Train was traveling below that limit, claims of excessive speed (absent some special conditions defined in the regulations) are barred.  CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 675-76 (1993).  The Train in this case was traveling at 43 miles per hour, well below the speed limit.  Thus, absent

---

[3]Similarly, the fact that the remote monitoring device (CRTU) was not used to monitor the Warning System for Activation Failures is irrelevant.  The CRTU was not part of the Warning System as approved by the FHWA, and so, the Warning System was adequate without the CRTU.  Also, the Commission did not require Union Pacific to use the CRTU to monitor the Warning System for Activation Failures.  Response, Exhibit 20, Illinois Commerce Commission Case No. T00-0095, Order entered November 1, 2000.  The CRTU, thus, is irrelevant to this case.

[4]The claim that the Warning System was malfunctioning due to Activation Failures would constitute a special condition under the regulations.  As discussed above, summary judgment is denied on that theory.

some special conditions defined in the regulations, the speed was not excessive.

The Plaintiffs argue that the surface of the Crossing was rough and that vegetation near the Crossing was so overgrown that it obscured the driver's ability to look down the track to see the Train coming, in violation of federal regulations and Union Pacific's own rules.  The Plaintiffs' only evidence on these points is the opinion of an expert, Alan Blackwell. Response, Exhibit 17, Expert Report of Alan Blackwell dated October 1, 2007.  Blackwell based his opinion on his observation of vegetation near the Crossing in September 2007.  Id.  His opinion about the condition of the Crossing and the surrounding vegetation more than two years after the Collision is not relevant and does not prove anything.  Since the Plaintiffs have no evidence on these points, Union Pacific is entitled to summary judgment on these claims.

THEREFORE, Union Pacific's Motion for Summary Judgment (d/e 283) is allowed in part.  Partial summary judgment is denied as to Plaintiffs' claims that: (1) the Warning System did not activate at all immediately prior to the Collision, and (2) Union Pacific had notice that the Warning System was malfunctioning due to Activation Failures, and it was obligated,

25

pursuant to 49 C.F.R. § 234.105, to take additional steps to warn automotive traffic at the Crossing, but did not do so.  Partial summary judgment is entered in favor of Union Pacific and against the Plaintiffs because no issues of fact exist with respect to the Plaintiffs' other theories of negligence.  Fed. R. Civ. P. 56(d)(1).

IT IS THEREFORE SO ORDERED.

ENTER:   June 2, 2008

FOR THE COURT:

s/  Jeanne E. Scott

JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE