IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MARIE PETERSEN n/k/a <br> MARIE CIMAGLIA, Special <br> Administrator of the Estate of <br> Jane Ann McGrath, deceased, and <br> Molly Morgan, deceased minor; <br> JON PETERSEN as next friend <br> of Katie Petersen, a minor; <br> STEVEN M. WALTERS <br> and GAYLA J. WALTERS, <br><br> Plaintiffs, <br><br> v. <br><br> UNION PACIFIC RAILROAD <br> COMPANY, a Delaware Corporation, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )  No. 06-3084 <br> ) <br> ) <br> ) <br> ) <br> ) |

**OPINION**

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Union Pacific Railroad Company's (Union Pacific) Motion to Bar the Expert Opinion Testimony of Craig Lichtblau and Anthony Gamboa (d/e 318). This case arose from an incident (Collision) in which a car was hit by a train at a railroad grade crossing in Carlinville, Illinois, identified as the Cisco

1

Crossing or Cisco Steel Road Crossing (Crossing). The accident occurred on July 22, 2004. Notice of Removal (d/e 1), Exhibit 1, Complaint at Law, ¶¶ 1-9. Plaintiff Katie Petersen was injured in the Collision. She was 15 years old at the time. The Plaintiffs intend to use Craig Lichtblau, M.D., as an expert witness to opine on the future impairment that Katie Petersen will suffer as a result of the Collision and her future medical expenses. The Plaintiffs intend to use Anthony Gamboa, Ph.D., to opine on the present value of Katie Petersen's lost income as a result of her future impairments from the injuries suffered in the Collision and the present value of the future medical expenses. Gamboa relies on Lichtblau's opinions regarding Katie Petersen's expected condition and her future medical expenses to reach his conclusions. Union Pacific argues that Lichtblau's opinion is inadmissible and Gamboa's is inadmissible because he relies on Lichtblau. Union Pacific asks the Court to bar this testimony as improper expert testimony.

After careful review of the materials and arguments submitted by the parties, the Court concludes that the Motion should be allowed in part. Lichtblau may testify to the opinions stated in his report except for his opinions regarding medical expenses that he has marked as "p.r.n.", and his opinions as to the possible cost of 24 hour care of Katie Petersen after she

2

reaches the age of 65. Gamboa may express his opinions as to the present value of Katie Petersen's lost earnings and her medical expenses except for opinions that are based on Lichtblau's opinions that are barred. Gamboa also must revise his opinion regarding the present value of anticipated steroid injections. Lichtblau limited those to nine injections over Katie Petersen's lifetime, but Gamboa assumed twenty-seven injections in his present value opinion based on this issue.

Expert testimony is governed by Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. This Court is required to perform a gate-keeping function to determine whether a party's proposed expert is qualified and whether his opinions have a proper basis and will assist the trier of fact. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593 (1993). The Court

3

will address Lichtblau's opinions first since Gamboa's opinions are based on Lichtblau's opinions.

Katie Petersen was thrown from the automobile at the time of the Collision. She was unconscious and suffered a collapsed lung, seven broken ribs and a traumatic brain injury. She was taken to the local hospital in Carlinville, Illinois, then air-lifted to St. John's Hospital in Springfield, Illinois. She was placed into a drug-induced coma for two days. She was on a ventilator for five days. She was in St. John's Hospital for three weeks. She was then transferred to the Rehabilitation Institute of Chicago for one week of in-patient care and therapy. She then went home and continued out-patient therapy. She returned to high school in the tenth grade on a part-time basis that fall. She went back to school full-time in January 2005. She successfully completed high school in 2007 and entered college in the fall of 2007, majoring in nursing. She is not currently under the care of any physician for her injuries.

Plaintiffs' counsel contacted Lichtblau to evaluate Katie Petersen. Lichtblau is a physiatrist with over 15 years experience in treating trauma

injuries and brain injuries.[1]  Lichtblau reviewed Katie Petersen's medical records.  He came to Katie Petersen's home and met with her and her mother to interview them and to observe her.  He then requested a neuropsychometric study of Katie Petersen.

Steven Rothke, M.D., performed the neuropsychometric study.  He concluded:

> She displays intact cognitive abilities in many areas (verbal and visuospatial intellectual functioning, abstract reasoning and problem solving, many aspects of verbal and nonverbal memory) with mild impairments noted in list learning (new learning of non-related, non-contextual material) along with an increased need for practice but limited benefit from practice in her learning, most likely related to her [traumatic brain injury].  She also displays borderline impaired arithmetical reasoning.  Her self-reported obsessive thinking about each day's events and her continued emotional reaction to her injury appear to be impacting her sleep, which may be exacerbating the concentration and short-term memory difficulties she reports and which are corroborated by some of the test findings.

Plaintiffs' Response to Motion to Bar the Expert Opinions of Dr. Craig Lichtblau and Dr. Anthony Gamboa (d/e 357) (Plaintiffs' Response), Exhibit M, Report of Dr. Steven Rothke, M.D., at 7.

Based on this information, Lichtblau formulated his opinions.  He

---

[1] A physiatrist is a physician who specializes in the field of physical medicine and rehabilitation.  American Medical Association, Complete Medical Encyclopedia, at 985 (1st ed. 2003).

5

opined that Katie Petersen "is not going to be able to maintain gainful employment in the competitive open labor market, or in a sheltered environment with a benevolent employer in any type of vocation that will require multi-tasking and is associated with time pressure during her job." Memorandum of Law in Support of Defendant's Motion to Bar Expert Opinion Testimony of Craig Lichtblau and Anthony Gamboa (d/e 319) (Defendant's Memorandum), Exhibit A, Lichtblau Report, Vocational Position Statement. He clarified that she will be able to work in the competitive labor market, but not at jobs that will place her in a high-pressure situation where she will be required to do many things at once. Defendant's Memorandum, Exhibit B, Deposition of Craig Lichtblau (Lichtblau Deposition), at 73-74.

He also opined that she had a one to fourteen percent permanent partial impairment of the whole person as a result of her injuries. He used the American Medical Association Guide to the Evaluation of Permanent Impairment to formulate this opinion. Lichtblau Report, AMA Impairment Rating.

Lichtblau also opined that as Katie Petersen, "suffers the secondary effects of aging, combined with her current impairment, her disability will

6

actually increase over time." <u>Lichtblau Report, Functional Assessment</u>.

Lichtblau also opined as to the anticipated medical care that Katie Petersen would need throughout her life. <u>Lichtblau Report, Continuation of Care</u>. He estimated the amount necessary to pay for some of her care over the course of her life. He marked some of the care, "p.r.n." In his deposition, Lichtblau explained that the p.r.n. notation meant that he could not opine that there was a 51% probability that she would require that particular care. <u>Lichtblau Deposition</u>, at 41-42, 44.

Last, Lichtblau opined that Katie Petersen would eventually need some kind of care from a certfied nurse's assistant (CNA). He opined that she could need: (a) part-time care of: (1) four hours care per day from age 65 to 70, (2) eight hours care per day from ages 70 to 75, and (3) twelve hours care per day from age 75 to her death, or (b) full-time care twenty-four hours a day from age 65 until death. He did not opine which of these two options was more likely or the specific probability of each, only that she was likely to need one of these two levels of care in her later life. <u>Lichtblau Report, Continuation of Care</u>; <u>Lichtblau Deposition</u>, at 51-52.

In evaluating these opinions, the Court must first consider whether Lichtblau is qualified to offer expert opinions about the risk that Katie

Petersen will suffer future impairments as a result of her injuries in the Collision. Fed. R. Evid. 104(a); Daubert, 509 U.S. at 593, n. 10. Lichtblau is a board certified physiatrist with experience in treating trauma patients. He has the requisite experience and training to render these opinions.

Next, the Court must determine whether Lichtblau has a proper basis for his opinions and whether his opinions will aid the trier of fact. Lichtblau relied on Katie Petersen's medical history, the neuropsychometric evaluation, his observations of her, and his experience in the field of trauma care. This is a proper basis for the formulation of his opinions.[2]

Union Pacific criticizes Lichtblau because he did not personally conduct the neuropsychometric study, but experts are allowed to rely on reports from other specialists. There is nothing improper in this. Union Pacific also complains that much of the anticipated care is for physical pain from the injuries and is unrelated to the brain injury. This is true, but Lichtblau has experience in treating trauma victims and brain injuries. Based on her medical records, he is qualified to opine regarding the types of pain control that Katie Petersen will need over her lifetime as a result of her

---

[2]He also relied on his research of prices for healthcare in Illinois. Union Pacific does not criticize his prices.

injuries. He is qualified to render these opinions.

His opinions regarding care noted with "p.r.n." and full-time care at age 65 will not aid the jury and will not be admitted. In Illinois an injured person can recover for future anticipated damages that result from an injury even if the probability that she will incur those damages is less than fifty-one percent, as long as the injured person can prove the probability that the damages will be incurred. Dillon v. Evanston Hosp., 199 Ill.2d 483, 504, 771 N.E.2d 357, 370 (Ill., 2002). Lichtblau testified that the probability that the care marked "p.r.n." would be needed was less than 51 percent, but he did not opine as to the probability of the care. His opinion will not aid the jury since Katie Petersen cannot recover for these risks unless she has evidence of the specific probability that the risks will occur. Lichtblau does not opine as to a specific probability; thus, these opinions will not aid the jury and are barred.

Similarly, he opined that Katie Petersen was likely to need one of two levels of care in her later life, but he could not state the probability that either would occur. He opines that she is likely to at least need the lower level of part-time care, so his estimate of the cost of that care is relevant and will help the jury in determining the damages she may suffer. But, he does

9

not set forth the probability of the risk that she will need the higher level; his testimony about that care will not aid the jury and is barred.

Gamboa opines regarding the present value of the costs of future care and the present value of Katie Petersen's lost income over her lifetime as a result of her injuries. He relies on Lichtblau's opinions regarding Katie Petersen's condition in the future and the cost of future care. Union Pacific does not challenge Gamboa's credentials. He is qualified to make such calculations and projections.

Gamboa's opinions are admissible to the extent that Lichtblau's opinions are admissible. Gamboa, thus, cannot opine about the medical costs marked p.r.n. and cannot opine about the present value of full-time care after age 65. Otherwise, his opinions are admissible to the extent that they rely on Lichtblau's opinion.

Union Pacific also challenges Gamboa because he used a discount rate of zero. The discount rate adjusts the award of damages for the rate of return that could be earned by receiving a lump sum payment now for damages that will be incurred in the future. Gamboa states that the return that could be received from investing the lump sum now would be offset by increases in the cost of care over time. As a result, he assumes a zero

10

discount rate. Union Pacific cites another economist who disputes this discount rate. Union Pacific can argue this to the jury, but this dispute is not a basis to bar Gamboa's opinion.

Gamboa also opined about the present value of lumbar steroid shots for pain over Katie Petersen's lifetime. He based his calculation on 27 shots over her lifetime. Lichtblau limited his opinion to nine over her lifetime. Gamboa, therefore, cannot opine about the present value of more than nine shots. His opinion regarding the present value of 27 shots is barred.

THEREFORE, Defendant Union Pacific Railroad Company's Motion to Bar the Expert Opinion Testimony of Craig Lichtblau and Anthony Gamboa (d/e 318) is ALLOWED in part. Lichtblau may testify to the opinions in his report except for his opinions regarding medical expenses that he has marked as "p.r.n.", and his opinions as to the possible cost of 24 hour care of Katie Petersen after she reaches the age of 65. Gamboa may express his opinions as to the present value of Katie Petersen's lost earnings and her medical expenses except for opinions based on the opinions of Lichtblau that are barred. Gamboa's opinions regarding the present value of anticipated steroid injections is also limited to nine injections over Katie Petersen's lifetime. The Motion is denied in all other respects.

11

IT IS THEREFORE SO ORDERED.

ENTER:   July 8, 2008

    FOR THE COURT:

                                          s/ Jeanne E. Scott
                                          JEANNE E. SCOTT
                              UNITED STATES DISTRICT JUDGE