## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MARIE CIMAGLIA, Special Administrator of the Estate of Jane Ann McGrath, deceased, and Molly Morgan, deceased minor; JON PETERSEN, as next friend of Katie Petersen, a minor; STEVEN M. WALTERS and GAYLA J. WALTERS, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  06-3084 |
| UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation, | ) ) ) | |
| Defendant. | ) | |

### <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Plaintiffs' Joint Motions in Limine and Memorandum of Law in Support of Motions (d/e 461) (Motion 461), which contains 54 separate numbered motions.  As stated below, some of these numbered motions are allowed, and some are denied.  Thus, Motion 461 is allowed in part and denied in part.

Defendant does not oppose the following numbered motions:

- 1 (regarding Steven Walters' alcohol use on the day of the accident);

- 7 (regarding parties' and witnesses' criminal histories and driving records);

- 8 (regarding Steven Walters' history of alcohol use);

- 18 (regarding the minivan's mechanical condition);

- 19 (regarding Plaintiffs' motives in filing this case);

- 24 (regarding the train crew's PTSD);

- 25 (regarding improper references to counsel);

- 28 (regarding rumors of the accident);

- 30 (regarding attorney-client agreements);

- 33 (regarding the characterization of requested damages as a get rich scheme);

- 34 (regarding collateral source payments generally);

- 39 (regarding Defendant's financial circumstances);

- 40 (regarding comparison to infamous cases);

- 41 (regarding addressing jurors by name);

- 42 (regarding requests to take away Defendant's money);

- 44 (regarding the case as a public burden);

- 50 (regarding reference to prior motions and rulings);

- 51 (regarding whether litigation delays healing); and

- 53 (regarding future care donated by family).

Thus, these motions are allowed.  Defendant contests the remaining motions, however, so the Court will address each individually.

I.    2:  DUTY TO STOP

Plaintiffs ask the Court to prohibit Defendant from claiming, suggesting, or arguing that Steven Walters, the driver of the minivan involved in the collision, had a duty to look for trains or slow or stop at the crossing prior to the collision.  This motion is denied.  Under Illinois law, when a person driving a vehicle approaches a railroad crossing, that person must "exercise due care and caution" and stop within 15-50 feet of the crossing if:

1. A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train;
2. A crossing gate is lowered or a human flagman gives or continues to give a signal of the approach or passage of a railroad train;
3. A railroad train approaching a highway crossing emits a warning signal and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;
4. An approaching railroad train is plainly visible and is in hazardous proximity to such crossing;
5. A railroad train is approaching so closely that an immediate hazard is created.

625 ILCS 5/11-1201(a).  Plaintiffs argue that the signal lights at the crossing here were not working at the time of the accident, and therefore Steven Walters had no duty to stop.  Whether the lights were working is a clear issue of fact, however.  If the jury determines that the lights were working, it also could find that Steven Walters violated his statutory duty to stop at the crossing.  Defendant is entitled to make such an argument to the jury.  Moreover, Defendant argues that the third, fourth, and fifth conditions were also present, triggering the duty to stop.  Thus, Walters may have had a statutory duty to stop regardless whether the lights were working.  Additionally, the duty to look for an oncoming train exists independent of this statute.  See Opinion (d/e 352) entered June 2, 2008, at 18 (noting that Walters had a duty to look).  Defendants may argue that Steven Walters had a duty to look and stop at the crossing.

II.    3:  CHARGES OR TICKETS FROM THE COLLISION

Plaintiffs ask the Court to prohibit any evidence regarding charges, tickets, or arrests Steven Walters received in connection with the accident at issue here.  This motion is allowed in part.  Plaintiffs assert that no charges, tickets, or arrests have resulted in convictions or guilty pleas, so such evidence would be hearsay and unfairly prejudicial.   Defendant

concedes that evidence of accident-related charges, tickets, or arrests would be inadmissible unless Steven Walters pleaded guilty in a criminal proceeding.   Evidence of a guilty plea constitutes an admission against interest that is admissible in later civil proceedings.  <u>McCottrell v. Benson</u>, 178 N.E.2d 144, 145 (Ill.App. 4th Dist. 1961).  Thus, this motion is allowed to the extent that evidence of Steven Walters' accident-related charges, tickets, or arrests is excluded unless Defendant can show that Steven Walters has pleaded guilty to such a charge in a criminal case.

III.   <u>4:  SETTLEMENT AMONG OTHERS INVOLVED</u>

Plaintiffs ask the Court to bar evidence related to settlements among the Plaintiffs and between Plaintiffs and others involved in this accident. This motion is allowed.  Under Federal Rule of Evidence 408, evidence of settlement offers, negotiations, and acceptances is inadmissible to prove liability "or amount of a claim" or to impeach through a prior inconsistent statement.  Defendant argues that this case presents an exception for two reasons, however.

First, Defendant contends that evidence of Plaintiffs' prior allegations that others were at fault for this accident are admissions that contradict their allegations against Defendant.  <u>See</u> <u>McCloughan v. City of Springfield</u>,

208 F.R.D. 236, 245 (C.D. Ill. 2002) (holding that prior pleadings constitute evidentiary admissions admissible in civil actions). This argument is off point, however, because prior pleadings differ from evidence of settlement. Defendant is entitled to introduce otherwise admissible evidence of Plaintiffs' prior allegations of fault against others, but settlement-related evidence is another matter.

Second, Defendant argues that evidence of Steven Walters' settlement with the other Plaintiffs should be admissible to support a setoff in damages. Under the Illinois Joint Tortfeasor Contribution Act, when a release or covenant not to sue is given to one among a group of tortfeasors, it "reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." 740 ILCS 100/2(c). Yet, determination of whether a setoff is appropriate, and which portions of the settlement award should be applied, is a matter for the Court. Pasquale v. Speed Products Engineering, 654 N.E.2d 1365, 1382-84 (Ill. 1995). Defendant need not present evidence of the settlement to the jury to receive a setoff. Thus, evidence of Plaintiffs' settlements is barred.

IV.    5:  PRIOR BAD ACTS

Plaintiffs ask the Court to exclude evidence regarding prior bad acts by Plaintiffs and their family members.  This motion is allowed.  Plaintiffs fail to indicate which particular acts may be at issue -- providing only vague examples such as convictions, driving records, business relations, and fighting.  Defendant concedes that as a general proposition, evidence of prior bad acts should not be admitted, and it also fails to advance any particular prior bad acts that it seeks to admit.  Thus, the motion is allowed to the extent that prior bad acts are excluded unless and until Defendant alerts the Court and opposing counsel outside the presence of the jury that it seeks to admit particular evidence under Federal Rule of Evidence 404(b).

V.    6:  SEATBELTS

Plaintiffs ask the Court to bar any mention or reference to seatbelts or their use in the minivan involved in this accident.  In Illinois, drivers, front seat passengers, and all passengers under the age of 19 riding with a driver under the age of 18 must wear seatbelts.  625 ILCS 5/12-603.1(a).  The failure to wear a seatbelt by any of these people "shall not be considered evidence of negligence . . . and shall not diminish any recovery for damages arising out of the ownership, maintenance, or operation of a

motor vehicle." 625 ILCS 5/12-603.1(c). Thus, by statute, parties cannot introduce evidence that a driver, front seat passenger, or passenger under the age of 19 riding with a driver under the age of 18 failed to wear a seatbelt. They can, however, introduce evidence that these individuals did wear seatbelts if that evidence goes toward establishing some issue at trial other than the ultimate issues of negligence or damages. <u>Bachman v. General Motors Corp.</u>, 776 N.E.2d 262, 296-97 (Ill.App. 4th Dist. 2002).

Moreover, while this statute does not apply to backseat passengers riding with drivers over the age of 18, the Illinois Supreme Court has held that absent a statutory duty to wear a seatbelt, evidence of seatbelt nonuse is inadmissible to prove either liability or damages. <u>Clarkson v. Wright</u>, 483 N.E.2d 268, 270 (Ill. 1985). Therefore, Defendant may not introduce evidence that any of the occupants of the minivan here wore a seatbelt, unless it first makes an offer of proof, outside the presence of the jury, that its evidence of seatbelt use goes to some relevant issue.

## VI.  9:  HEALTH OF BILLY WHITLOCK, SR.

Plaintiffs ask the Court to bar evidence of the health of witness Billy Whitlock, Sr., a Union Pacific signal maintainer. This motion is denied. Plaintiffs argue that evidence of Whitlock's health would be unfairly

prejudicial, but they fail to indicate why this evidence would prejudice them. Defendant indicates that Whitlock suffers from Parkinson's Disease. It indicates that in a video of Whitlock's deposition, which may be introduced at trial, his symptoms are apparent. Defendant argues that it is entitled to explain his condition to the jury to avoid prejudicial assumptions regarding the cause of his symptoms. Defendant's position is reasonable, and given Plaintiffs' failure to explain how such information would unfairly prejudice them, Plaintiffs' motion is denied.

## VII.  10:  DEFENDANT'S CONTROL OF EVIDENCE

Plaintiffs ask the Court to prohibit Defendant from denying that it had exclusive control over certain evidence, such as signal equipment and recorders at the railroad crossing. This motion is denied. Unless Plaintiffs can establish a judicial admission on the part of Defendant or a prior ruling by this Court dispensing with an issue, Defendant is entitled to deny any allegation it chooses. Whether Defendant has offered sufficient evidence to support its denials is an issue for the jury, but absent a prior judicial admission or ruling, the Court will not prohibit Defendant in limine from denying any allegation.

VIII. <u>11:  EVENT RECORDER AND THE LIGHTS</u>

Plaintiffs ask the Court to prohibit Defendant from arguing that the download of the event recorder on July 22, 2004, or any other download, conclusively proves that the lights at the crossing were working properly at the time of the accident.  This motion is allowed.  At summary judgment, the Court rejected Defendant's argument that the event recorder data cannot be rebutted and held that an issue of fact remains on the question of whether the crossing warning system operated properly at the time of the accident.  <u>See</u> <u>Opinion issued June 2, 2008</u>, at 14-15, 18.  Thus, Defendant is prohibited from arguing that the event recorder data *conclusively* establishes that the lights at the crossing worked properly.

IX. <u>12:  MULTIPLE RECORDERS AND THE CRTU</u>

Plaintiffs ask the Court to prohibit Defendant from denying: (1) that the primary Safetran recorder board, the CRTU, and the standby Safetran recorder board were all designed to monitor the same data from the same sources and (2) that the missing CRTU data would have rebutted Defendant's claim that the lights were working properly at the time of the accident.  This motion is denied.  Again, the Court will not prohibit Defendant from denying an allegation absent a judicial admission or prior

Court ruling on the allegation.  Here, Plaintiffs have presented neither.

## X.  13:  RECORDERS UNDER DEFENDANT'S CONTROL

Plaintiffs ask the Court to prohibit Defendant from denying that the Safetran recorder board, the CRTU, and the standby Safetran recorder board were under Defendant's control.  This motion is denied as duplicitous of motion 10.

## XI.  14:  DESTRUCTION OF EVIDENCE

Plaintiffs ask the Court to bar Defendant from denying: (1) that it destroyed or failed to preserve CRTU and Safetran recorder board data and (2) that before this accident, no Safetran recorder board was removed after an accident, or that it is not normal practice to remove Safetran recorder boards from crossings.  This motion is denied.  Again, Plaintiffs have failed to present any judicial admission or prior Court ruling deciding these issues. Absent one of these two factors, the Court will not prohibit Defendant from denying any allegation.  Plaintiffs can refute any denial with their evidence.

## XII.  15:  WARNINGS OF 19 OR FEWER SECONDS

Plaintiffs ask the Court to prohibit Defendant from denying: (1) that light activations 19 or fewer seconds before a train enters a crossing constitute activation failures and (2) that five such activation failures

occurred at this crossing before the accident at issue.  This motion is denied in part and allowed in part.

The first half of Plaintiffs' request is denied.  Federal regulations require highway-rail grade crossing warning systems to provide "in no event . . . less than 20 seconds warning time for the normal operation of through trains before the grade crossing is occupied by rail traffic;" failure to satisfy this requirement constitutes an activation failure.  49 C.F.R. § 234.225.  Thus, not all light activations of 19 or fewer seconds constitute activation failures -- only those involving the normal operation of through trains.  Defendant may deny that *all* light activations of 19 or fewer seconds before a train enters a crossing constitute activation failures.

The second half of Plaintiffs' request is allowed, however; Defendant may not deny that the five events at issue constituted activation failures.  The Federal Register Notice provides that "switching movements or train operations that require stopping short of the grade crossing" do not constitute "normal through train operations."  61 Fed. Reg. 31802, 31804 (Aug. 19, 1996).  At summary judgment, the Court held that the question of what constitutes "normal through operations" is a legal matter and concluded that any train that is not engaged in switching movements or

stopping short of a grade crossing is engaged in "normal through operations." Opinion issued June 2, 2008, at 20-21. Plaintiffs argued at summary judgment that the five incidents in question did not constitute activation failures because they involved Amtrak trains accelerating through the crossing, and thus these trains were not engaged in "normal through operations." The Court, however, rejected this position based on its interpretation of "normal through operations."

Defendant now advances the same argument in opposition to Plaintiffs' motion to prohibit it from denying that the five incidents in question constituted activation failures. At summary judgment, the Court invited Defendant to raise the issue of "normal through operations" again in a motion in limine if it could find additional authority regarding the meaning of the phrase, but Defendant has not included any additional authority in its briefing here or in Defendant's Motion in Limine Regarding Evidence of Alleged Prior "Activation Failures" at the Crossing (d/e 447). As noted at summary judgment, the opinions of expert witnesses are not appropriate support for a legal argument. Because Defendant has offered nothing more, the Court's summary judgment ruling stands.

## XIII. <u>16:  OPERATION OF LIGHTS AFTER THE COLLISION</u>

The Court interprets Plaintiffs' motion as asking the Court to prohibit Defendant from: (1) denying that it has taken the position that whether the signal lights were operating on individual occasions after the accident here is immaterial; (2) denying that evidence that the lights worked at the crossing after the accident does not mean that they worked at the time of the accident; (3) denying that post-accident inspection and testing is not relevant; (4) arguing that evidence that the lights worked after the accident means that they worked at the time of the accident or that they always worked; (5) denying that Mitch Hibschman's inspection after the accident only established the condition of the lights at the time of his inspection; (6) arguing that Hibschman's testing proves that the lights worked properly at the time of the collision; and (7) denying that despite a request, Hibschman was not provided a copy of the download when he visited the site the day of the accident.  This motion is denied.  Plaintiffs' requests are confusing and contain multiple double negatives.  To the extent the Court understands their requests, it notes that they have offered no judicial admission or prior Court order in support of their positions.  Absent one of these two considerations, Defendant may deny any allegation it wishes.

Any argument Defendant advances is subject to rebuttal, impeachment, and the jury's assessment of the evidence. The Court will not order Defendant to take positions consistent with Plaintiffs' own positions. These requests are not appropriate grounds for motions in limine.

## XIV. 17: BLAME OF STEVEN WALTERS

Plaintiffs ask the Court to prohibit Defendant from: (1) speculating, suggesting, or insinuating that the Petersens, the Morgans, their family members, or family members of the deceased blame the accident on Steven Walters; (2) introducing any reference to the fact that these individuals have not talked amongst themselves about the facts of the accident; and (3) introducing any reference to good faith settlement efforts and statements made in the course of those efforts. This motion is denied in part and allowed in part. As previously noted, parties are permitted to introduce evidence of prior positions by their opponents as admissions. Thus, Plaintiffs' first request in this motion is denied. Similarly, parties are permitted to explore credibility when examining witnesses; questioning a witness about his or her subsequent interactions with others involved is a reasonable means of doing so. Thus, Plaintiffs' second request in this motion is denied. As stated above, however, settlement-related evidence is

not admissible.  Thus, Plaintiffs' third request in this motion is allowed.

## XV.   20:  WITNESS INTERVIEWS

Plaintiffs ask the Court to bar any evidence that they or their representatives interviewed witnesses before trial, provided them with copies of their prior testimony and statements, or gave them copies of reports they prepared.  This motion is denied.  Interviewing witnesses pretrial is not improper, but Defendant is entitled to cross-examine these witnesses regarding their contacts with the Plaintiffs and how the witnesses prepared to testify.

## XVI.  21:  EVIDENCE THAT COULD HAVE BEEN REBUTTED

Plaintiffs ask the Court to exclude any evidence that they believe could have been rebutted by evidence Defendant destroyed.  This motion is denied.  Plaintiffs have not identified specific evidence they believe should be excluded, and they offer nothing more than speculation to support their belief that the missing evidence would have rebutted it.

## XVII. 22:  LAY OPINIONS ON CAUSATION

Plaintiffs ask the Court to prohibit Defendant from eliciting an opinion from an investigating officer or other lay witness regarding causation or factors that contributed to the accident.  This motion is denied

as ambiguous.   Plaintiffs have not identified particular opinions they consider objectionable.  Whether a lay opinion is admissible depends on the subject on which the witness opines.  See Fed. R. Evid. 701.  For example, under some circumstances, lay witnesses are permitted to opine on speed. Because the Court does not know which opinions are at issue, it will rule on them as they arise at trial.

XVIII. 23:  CELL PHONE

Plaintiffs ask the Court to exclude any reference to cell phone, walkie-talkie, CB, or other electronic communications device usage by Steven Walters within 30 minutes of the accident, any reference to the presence of a cell phone in the minivan at the time of the accident, and any implication that Walters was doing anything but "driving his motor vehicle in a normal fashion" at the time of the accident.  Motion 461, at 31.  This motion is denied.  Plaintiffs fail to state the factual basis of their concern over these issues, and Defendant denies any knowledge of it, but if Steven Walters were talking on a cell phone or other device at the time of the accident or distracted by a ringing phone, that certainly would be relevant.  Moreover, whether he was driving his vehicle in a proper fashion at the time of the accident is a key disputed issue in this case.  Defendant is entitled to

introduce evidence regarding Walters' driving at the time of the accident.

## XIX.  26:  FABRICATED FACTS

Plaintiffs ask the Court to exclude any "fabricated facts" Defendant may assert.  <u>Motion 461</u>, at 33.  This motion is denied.  Plaintiffs fail to identify any "fabricated facts."  <u>Id.</u>  Both parties are expected to present only genuine evidence.  Without specific identification of which facts Plaintiffs believe to be fabricated, the Court cannot guess as to such evidence.  This is not a proper basis for a motion in limine.

## XX.  27:  DOCUMENT PRESERVATION AND RETENTION

Plaintiffs ask the Court to prohibit Defendant from arguing that evidence was destroyed pursuant to a document retention policy.  This motion is denied.  Essentially, Plaintiffs ask the Court to prevent Defendant from denying that it had any basis for destroying evidence in this case.  As noted before, absent a judicial admission or prior Court ruling, the Court will not prohibit Defendant from denying an allegation.  Jurors will assess the strength of any evidence Defendant advances in support of its denials; these are not issues for in limine decisions.

## XXI.  29:  PLAINTIFFS' PRIOR CLAIMS AND SETTLEMENTS

Plaintiffs ask the Court to bar evidence and argument regarding their

past claims, lawsuits, and settlements, and those of their decedents or representatives.  This motion is allowed in part and denied in part.  It is allowed to the extent that evidence of claims, suits, and settlements regarding issues unrelated to this case are excluded.  Evidence of settlements, if any, in this case are excluded.  To the extent that past claims and suits are related to issues in this case, it is denied.

## XXII. 31:  DAMAGES REQUESTED EXCEED EXPECTATIONS

Plaintiffs ask the Court to prohibit Defendant from arguing or implying that Plaintiffs do not expect to receive the full amount of damages they have requested.  This motion is allowed.  What Plaintiffs *expect* is irrelevant.  The only issue for the jury is what Plaintiffs have proven they are entitled to receive.  The Court notes, however, that this decision does not bar Defendant from arguing that Plaintiffs have asked for more damages than their evidence supports.

## XXIII. 32:  DAMAGES REQUEST IS SHOCKING

Plaintiffs ask the Court to preclude Defendant from arguing or implying during opening statement and closing argument that counsel is shocked by Plaintiffs' damages request.  This motion is denied.  Whether comments during opening statement and closing argument are proper is a

matter that the Court must determine in context.  It will decide these issues as they arise at trial.

## XXIV. 35:  INSURANCE AND OTHER VOLUNTARY PAYMENTS

Plaintiffs ask the Court to prohibit any evidence, argument, or innuendo regarding whether Plaintiffs have received any insurance or other voluntary payments.   This motion is allowed.   Defendant specifically indicates that it does not object to Plaintiffs' position regarding insurance proceeds and disability payments, voluntary payments by an employer, retirement fund benefits, medical insurance, health or accident benefits, payments for past and future medical expenses covered by insurance, and life insurance proceeds.  Moreover, as previously stated, the Court will not allow evidence of settlement payments.  Thus, Defendant may not introduce evidence of any of these payments.

## XXV. 36:  SOCIAL SECURITY PAYMENTS

Plaintiffs ask the Court to prohibit any evidence, argument, or innuendo regarding whether Plaintiffs have received or are entitled to receive social security benefits.  This motion is allowed.  Under the Illinois collateral source rule, the amount of damages for a plaintiff in a civil action is not decreased by the amount of benefits the plaintiff may receive from a

source independent of the alleged wrongdoer.  Boden v. Crawford, 552 N.E.2d 1287, 1291 (Ill.App. 4th Dist. 1990).  Social security retirement benefits would not come from Defendant, so the jury is not to consider these payments in deciding damages.

XXVI. 37:  INCOME TAX

Plaintiffs ask the Court to prohibit Defendant from introducing evidence or argument regarding whether Plaintiffs' damages recovery would be subject to income tax.  This motion is denied.  The recovery of a victim in a personal injury or wrongful death case for lost future wages is not subject to income tax.  See In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979, 701 F.2d 1189, 1192 (7th Cir. 1983) (In re Air Crash I). Illinois courts, however, refuse to instruct jurors that their damage awards will not be subject to taxation.  Id. at 1199.  Thus, Plaintiffs argue that Defendant should not be able to inform jurors of the non-taxability of a lost wages damage award.  Illinois law does not necessarily govern here, though.

In diversity cases, where state law decisions on jury instructions or the admissibility of evidence are based on substantive state law, federal courts must apply that state law.  Id.  Where such decisions are based only on procedural law, or on incorrect interpretations of federal law, federal law

21

governs.  Id.  Under federal law, jurors are instructed that their lost wages damage award is not subject to taxation.  In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979, 803 F.2d 304, 314 (7th Cir. 1986) (Air Crash II).  Thus, whether such an instruction -- and argument or evidence related to it -- is proper here depends on whether the Illinois prohibition is based on substantive law.

In 1983, in Air Crash I, the Seventh Circuit held that Illinois' ban on a tax instruction was not substantive.  Air Crash I, 701 F.2d at 1200. Specifically, it concluded that in Hall v. Chicago & North Western Railway, the Illinois Supreme Court had prohibited such an instruction on two procedural bases and one misunderstanding of federal law.  Hall, 125 N.E.2d 77 (Ill. 1955).  In 1985, the Illinois Supreme Court issued another decision on this issue.  See Klawonn v. Mitchell, 475 N.E.2d 857 (Ill. 1985).  The Illinois Supreme Court did not address Air Crash I, but it noted that it disagreed with other federal cases allowing this instruction and reaffirmed its procedural bases for banning the instruction.  See Klawonn, 475 N.E.2d at 860-61.  In 1986, in Air Crash II, the Seventh Circuit reaffirmed, in dicta, its conclusion that Illinois had no substantive reason for refusing the instruction.  Air Crash II, 803 F.2d at 315.  It did not address

<u>Klawonn</u>.

District courts in this circuit have held that <u>Klawonn</u> did not change the state of the law in Illinois, however, and have continued to reject motions in limine calling for a ban on tax instructions.  <u>See, e.g.</u>, <u>Opio v. Wurr</u>, 901 F.Supp. 1370, 1373-74 (N.D. Ill. 1995); <u>see also</u> <u>Couch v. Village of Dixmoor</u>, 2006 WL 3409153, at *2 (N.D. Ill. Nov. 27, 2006); <u>Nichols v. Johnson</u>, 2002 WL 826482, at *1 (N.D. Ill. May 1, 2002).  Thus, this Court concludes that it must follow federal law.  It follows that argument or evidence on this issue is allowed as well.

XXVII. <u>38:  PRIOR INJURIES AND HEALTH CONDITIONS</u>

Plaintiffs ask the Court to prohibit Defendant from questioning Plaintiffs regarding injuries and health conditions they suffered before or after the accident absent a showing by competent medical testimony outside the presence of the jury that such a line of questioning is connected to Plaintiffs' accident-related injuries and conditions.  This motion is allowed in part and denied in part.  Defendant may not question Plaintiffs regarding prior or subsequent injuries without establishing to the Court's satisfaction, outside the presence of the jury, some connection between the prior or subsequent condition and the accident-related injuries.  Yet, medical

23

testimony is not always necessary; in federal court, any witness competent to offer an opinion may do so.  Ueland v. United States, 291 F.3d 993, 998 (7th Cir. 2002).  Where "a lay person can readily appraise the relationship, if any, between [pre- and post-accident] injuries without expert assistance," the Court will admit non-medical testimony.  Voykin v. Estate of DeBoer, 733 N.E.2d 1275, 1280 (Ill. 2000).  Thus, whether competent medical testimony will be required depends on the injuries involved.  The Court will address such issues as they arise at trial.

## XXVIII. 43:  PERSONAL KNOWLEDGE OF DEFENSE COUNSEL

Plaintiffs ask the Court to prohibit defense counsel from referring to their own opinions or knowledge when commenting on the truth or credibility of evidence.  This motion is denied.  While attorneys clearly cannot testify or vouch for the truthfulness of a witness's testimony, Plaintiffs make no attempt to explain why they believe defense counsel might inject personal commentary here.  See Rodriguez v. Peters, 63 F.3d 546, 564 (7th Cir. 1995).  Thus, this motion is overly ambiguous and is denied for that reason.

## XXIX. 45:  PERSONAL INJURY AWARDS GENERALLY

Plaintiffs ask the Court to prohibit Defendant from arguing or

implying that personal injury awards generally are too high.  This motion is allowed.  Defendant may not comment on whether other personal injury awards were appropriate.  It may, however, argue that Plaintiffs have asked for an excessive award, based on the evidence.

## XXX. 46:  DIVORCE OF MCGRATH AND MORGAN

Plaintiffs ask the Court to bar any argument regarding, and evidence of, the reasons for the divorce of Jane Ann McGrath and Melvin Morgan and Melvin Morgan's abandonment of his children.  This motion is allowed.  Plaintiff Marie Cimaglia has brought claims on behalf of Jane Ann McGrath and her daughter Molly Morgan.  Defendant indicates that McGrath's ex-husband Melvin Morgan will not be present during the proceedings or called as a witness.  Defendant contends that it should be able to explain why Melvin Morgan is not a Plaintiff here.  The Court sees no relevance to Melvin Morgan's absence and no unfair prejudice to Defendant if his absence goes unexplained.  Thus, Defendant need not address the divorce and alleged abandonment; this motion is allowed.

## XXXI. 47:  DIVORCE OF CIMAGLIA AND PETERSEN

Plaintiff also asks the Court to bar argument regarding, and evidence of, the divorce of Plaintiffs Marie Cimaglia and Jon Petersen, parents of

Plaintiff Katie Petersen.  This motion is allowed in part and denied in part. It is allowed to the extent that Defendant may not introduce evidence of the financial details of Marie Cimaglia's and Jon Petersen's divorce.  It is denied to the extent that Defendant may introduce evidence of the divorce itself and the impact it had on the health and wellbeing of the Plaintiffs. Plaintiffs have placed Katie Petersen's psychological health at issue by alleging emotional and psychological damages.  Defendant is entitled to present evidence that her psychological health is related to the impact of her parents' divorce.  Similarly, Plaintiffs have argued that her accident-related injuries caused a decline in her academic success, but Defendant is entitled to present evidence that this decline may have resulted from her difficulties in dealing with her parents' divorce.  Their divorce is relevant to some issues at trial.

## XXXII. 48:  METHODOLOGY OF DR. GAMBOA

Plaintiffs ask the Court to bar any argument or inference by Defendant that the discount rate used by expert witness Dr. Anthony Gamboa is not commonly recognized or accepted.  This motion is denied. On cross-examination, Defendant is entitled to challenge Dr. Gamboa's methodology.  Whether the discount rate he used is appropriate is an issue

in the trial.

## XXXIII. 49:  FAILURE TO CALL A DOCTOR

Plaintiffs ask the Court to prohibit Defendant from prompting the jury to speculate regarding why Plaintiffs have not called some of their treating physicians or other witnesses.  This motion is denied.  Plaintiffs have presented no legal authority to bar such argument.  While Defendant may not offer unsupported reasons for these witnesses' absences, it may point out the absences to the jury.

## XXXIV. 52:  FUTURE MEDICAL CARE BENEFITS

Plaintiffs ask the Court to prohibit Defendant from implying that Plaintiffs in the future may receive free medical care from the government or other charities.  This motion is allowed, although the Court notes it is repeated in motions 35 and 36.

## XXXV. 54:  HEARSAY IN MEDICAL RECORDS

Plaintiffs ask the Court to bar any questioning or commentary regarding non-medical factual hearsay in medical records, such as notations about how the accident occurred.  This motion is denied.  First, Plaintiffs have failed to identify particular sections in the medical records that may be at issue.  In addition, certain non-medical material in medical records,

particularly regarding a patient's reported account of the accident, may have affected how doctors treated the patient. This information could be admissible for non-hearsay purposes. In such instances, a limiting instruction may be appropriate. Because apparent hearsay in medical documents is not per se inadmissible in all instances, and because Plaintiffs have not identified particular statements for consideration, this is an issue that the Court will address as it arises at trial.

THEREFORE, Plaintiffs' Joint Motions in Limine and Memorandum of Law in Support of Motions (d/e 461) is ALLOWED in part and DENIED in part, as detailed in this Opinion.

IT IS THEREFORE SO ORDERED.

ENTER:   February 25, 2009

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE