E-FILED
Wednesday, 25 February, 2009  10:02:34 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MARIE CIMAGLIA, Special Administrator of the Estate of Jane Ann McGrath, deceased, and Molly Morgan, deceased minor; JON PETERSEN, as next friend of Katie Petersen, a minor; STEVEN M. WALTERS and GAYLA J. WALTERS, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  06-3084 |
| UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation, | ) ) ) ) | |
| Defendant. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendant's Motions In Limine (d/e 445, 447, 449, 451, 453, 455, 457, 459), Defendant's Appeal of That Part of Magistrate Judge Cudmore's January 12, 2009, Opinion (Doc. 443) Allowing in Part Plaintiff's Renewed Motion for Sanctions (Doc. 427) (d/e 463), and Defendant's Motion to Strike (d/e 489).  For the reasons stated below, Motions 445, 449, 451, 453, 455, and 459 are allowed in part and

denied in part.  Motions 447, 457, and 463 are denied.  Motion 489 is allowed.

I.   <u>MOTION 445</u>

In Motion 445, Defendant asks the Court to exclude any argument or suggestion that jurors consider "the value of life" in calculating Plaintiffs' damages.  <u>Motion 445</u>, at 1.  This Motion is allowed in part and denied in part.  It is allowed to the extent that Plaintiffs may not suggest that the jury calculate an award accounting for the inherent value in decedents' lives.  It is denied to the extent that Plaintiffs may argue that jurors should place a monetary value on societal factors such as a Plaintiff's loss of a decedent's "love, affection, care, attention, companionship, comfort, guidance, and protection."  <u>See</u> <u>Singh v. Air Ill., Inc.</u>, 520 N.E.2d 852, 858 (Ill.App. 1ˢᵗ Dist. 1988).

II.   <u>MOTION 447</u>

In Motion 447, Defendant asks the Court to bar any evidence or opinion that on occasions before the accident at issue here, the warning system at this crossing failed to activate at least 20 seconds before the train entered the crossing.  This Motion is denied.  The Court ruled on this issue at summary judgment, and Defendant has presented no new legal authority

to justify a reconsideration.

Plaintiffs have identified five incidents before this accident that they contend constituted activation failures.  At summary judgment, the Court agreed.  First, the Court noted that federal regulations require highway-rail grade crossing warning systems to provide "in no event . . . less than 20 seconds warning time for the normal operation of through trains before the grade crossing is occupied by rail traffic;" failure to satisfy this requirement constitutes an activation failure.  49 C.F.R. § 234.225.  The Federal Register Notice provides that "switching movements or train operations that require stopping short of the grade crossing" do not constitute "normal through train operations."  61 Fed. Reg. 31802, 31804 (Aug. 19, 1996).  What constitutes "normal through operations" is a legal matter, and the Court concluded that any train not switching movements or stopping short of a grade crossing is engaged in "normal through operations."  Opinion issued June 2, 2008 (d/e 352), at 20-21.  Defendant argued that the five activation failures Plaintiffs identify did not constitute activation failures because they involved Amtrak trains accelerating through the crossing, and thus trains not engaged in "normal through operations," but the Court rejected this position based on its interpretation of "normal through operations."

In Motion 447, Defendant again argues that because these five incidents involved accelerating Amtrak trains, they did not constitute activation failures and thus are irrelevant. At summary judgment, the Court invited Defendant to raise the issue of "normal through operations" again in a motion in limine if it could find additional authority regarding the meaning of the phrase, but Defendant has not included any additional authority in its briefing here. As noted at summary judgment, the opinions of expert witnesses are not appropriate support for a legal argument. Because Defendant has offered nothing more, the Court's summary judgment ruling stands. These five incidents constitute activation failures, and Plaintiffs may introduce evidence of them.

III.  <u>MOTION 449</u>

In Motion 449, Defendant asks the Court to bar all evidence and opinion regarding the Cellular Remote Terminal Unit (CRTU). Motion 449 is allowed in part and denied in part. Before detailing its decision, the Court notes that it has issued numerous other Opinions which have discussed the CRTU and its discovery history extensively. The Court will not rehash that history here and will assume that the parties are familiar with it.

4

Preliminarily, the Court holds that some evidence regarding the CRTU may be relevant at trial. At summary judgment, the Court held that by authorizing the construction of the warning system at the crossing and providing federal funds for it, the Federal Highway Administration (FHWA) conclusively determined that the warning system was adequate under federal law. See Opinion issued June 2, 2008, at 23-24. In deciding this issue, the Court noted that because the CRTU was not part of the warning system approved by the FHWA, Plaintiffs cannot rely on the use or misuse of the CRTU to argue that the warning system here was inadequate. The Court noted, "The CRTU, thus, is irrelevant to this case." Id. at 24, n.3. While Defendant has read this note to hold broadly that the CRTU is entirely irrelevant to any issue in this case, the Court's ruling was limited to the issue discussed. In context, the Court ruled only that the CRTU is irrelevant to the issue of whether the warning system was adequate. Evidence regarding the CRTU may be relevant on other issues.

First, data that the CRTU transmitted or actually recorded and that still exists may be relevant. For example, if the CRTU recorded data from which activation failures at the crossing could be detected and this data still exists, it may be admissible. At summary judgment, the Court understood

that the CRTU was not used to record data from which activation failures could be detected.  Defendant has indicated since then that the CRTU did record data from which activation failures could be detected.  See Defendant's Response to Plaintiffs' Renewed Motion for Sanctions (d/e 432), at 7 (conceding that had the CRTU been downloaded after the accident, it would have contained the same information as the Safetran primary event recorder).  If any of the data the CRTU recorded regarding activation failures still exists, it may be relevant, and Plaintiffs may attempt to introduce such evidence.  Thus, Motion 449 is denied to the extent that Plaintiffs may introduce relevant evidence of existing data actually taken from or transmitted by the CRTU.

Second, evidence that the CRTU actually recorded data that would have been admissible, but that no longer exists, may be relevant.  If Plaintiffs can show to the Court, outside the presence of the jury, that relevant CRTU data still existed on March 25, 2005, when they first requested evidence or information regarding the CRTU in the Walters' Production Request Nos. 13 and 20, they may introduce evidence that such data no longer exists.  Until Plaintiffs make this showing to the Court, they may not mention this issue to the jury.  Thus, Motion 449 is denied to the

extent that Plaintiffs may introduce evidence that the CRTU actually recorded relevant data that no longer exists, provided that they first meet this threshold requirement in a proffer to the Court outside of the presence of the jury.

In a related matter, Plaintiffs have asked the Court to revisit its ruling regarding expert Larry Farnham.  The Court previously barred all expert testimony from Plaintiffs' expert Larry Farnham except his opinion that the crossing's warning system had not functioned properly on five occasions before this accident.  See Text Order issued July 3, 2008.  The Court now holds that if Plaintiffs previously disclosed an opinion by Farnham regarding the threshold issue of whether relevant CRTU data still existed on March 25, 2005, they may offer this opinion as part of their proffer on this issue outside of the jury's presence.  Again, Plaintiffs may not mention this matter to the jury until they make this showing.  If the Court decides after this proffer that Plaintiffs can present evidence that the CRTU actually recorded data that would have been admissible but that no longer exists, Plaintiffs then may renew their request to reconsider the Court's decision on the admissibility of Farnham's opinions.

Third, evidence that Defendant could have had the CRTU record

additional data, but chose not to do so, is irrelevant.  Such evidence would relate only to the CRTU issue the Court decided at summary judgment. Plaintiffs may not introduce such evidence.  Thus, Motion 449 is allowed in part and denied in part.

IV.  <u>MOTION 451</u>

In Motion 451, Defendant asks the Court to exclude any evidence or opinion that it altered, destroyed, or otherwise spoliated evidence in this case.  Motion 451 is allowed in part and denied in part.  Before detailing its decision, the Court notes that prior Opinions in this case have discussed Plaintiffs' allegations of spoliation -- including CRTU-related spoliation -- extensively.  Again, the Court will not rehash prior discussions here and will assume that the parties are familiar with the history of this issue.

Plaintiffs' allegations of spoliation relate to three different electronic recording devices: the CRTU, the primary Safetran recorder board, and the standby Safetran recorder board.  Motion 451 is denied in part, in that the Court will allow evidence of spoliation on the CRTU if Plaintiffs first can establish outside the jury's presence that now-missing relevant CRTU data existed on March 25, 2005.  Again, Plaintiffs may not mention this matter to the jury until they first make this showing to the Court.

Motion 451 is allowed to the extent that the Court excludes evidence that Defendant failed to download the data from the standby Safetran recorder board.  Plaintiffs have offered no authority requiring Defendant to download the standby Safetran recorder board.  Moreover, the parties indicate that the standby Safetran recorder board was a backup recorder that did not activate until the primary Safetran recorder board ceased operation.  Because Plaintiffs have not alleged that the primary Safetran recorder board ceased operation at any relevant point here, it is unlikely that the standby Safetran recorder board ever recorded anything relevant.  Thus, evidence that Defendant never downloaded the standby Safetran recorder board is irrelevant.

Motion 451 also is allowed to the extent that the Court excludes evidence of the extra line feed and the 49 new lines in the primary Safetran recorder board data.  The Court previously ruled that Plaintiffs have failed to identify sufficient evidence to establish that these issues represent intentional editing or deletion of information.  Moreover, the Court also has noted that these alterations exist in data regarding events that occurred weeks before the accident here.  Thus, these alterations are irrelevant, and Plaintiffs may not introduce evidence of them.

Motion 451 is denied to the extent that Plaintiffs may offer evidence that: (1) Mitch Hibschman requested but did not receive a printout of the primary Safetran recorder board download when he conducted his ICC investigation of the accident; (2) Hibschman noted in his ICC report that he had reviewed the data from the primary Safetran recorder board download (on a laptop of Defendant's) and found no activation failures, when evidence of such failures existed in the official printout of the primary Safetran recorder board download; and (3) the primary Safetran recorder board was removed from the crossing before the ICC began its investigation. All of this evidence is relevant to the credibility and reliability of Hibschman and the ICC investigation.

Additionally, in their briefing on Motion 451, Plaintiffs have asked for an adverse inference instruction that allows the jury to presume that any spoliated evidence would have been harmful to Defendant. The Court reserves ruling on this issue until after it has heard all of the evidence. At that time, the parties may request particular instructions, and the Court will decide whether each is appropriate based on the evidence the jury heard.

V.   <u>MOTION 453</u>

In Motion 453, Defendant asks the Court to bar evidence of matters

resolved at summary judgment.  This Motion is allowed in part and denied in part.  Plaintiffs indicate that they plan to present no evidence on two of the matters, but they assert that the Court's decision at summary judgment left room for evidence on other issues.  Initially, regarding the brakes and speed, Plaintiffs do not oppose Motion 453.  Thus, Motion 453 is allowed to the extent that all evidence regarding maintenance and functionality of the brakes and whether the train was traveling at an excessive speed is excluded.  Next, Plaintiffs contend that they may present limited evidence on the train crew's lookout, the train horn, crossing safeguards, the CRTU, and vegetation.  The Court will address each individually.

> A.   <u>PROPER LOOKOUT</u>

First, Defendant asks the Court to bar evidence that its employees failed to keep a proper lookout for signal malfunctions.  This portion of Motion 453 is allowed.  At summary judgment, the Court held that Defendant's employees "kept a proper look out," and therefore no breach of duty dispute existed on this issue.  <u>Opinion issued June 2, 2008</u>, at 13.  Subsequently, Plaintiffs asked the Court to reconsider its decision to allow them to admit evidence that Defendant's employees breached their duty to keep a proper lookout particularly for signs of signal malfunctions.  The

Court held that because Plaintiffs failed to plead this alleged breach of duty, such evidence would be barred.  Opinion (d/e 375) issued July 2, 2008, at 3.

Plaintiffs now argue that the Court's prior decisions do not prevent them from introducing evidence that Defendant's employees on the train could not see the signals in the manner in which they claim.  The Court agrees that this issue relates to whether the signals were malfunctioning, not whether the employees kept a proper lookout for malfunctions.  The Court's prior decisions on the lookout issue focused on whether Defendant breached a duty.  Plaintiffs may not present evidence that Defendant's employees breached their duty to keep a proper lookout, but they may present evidence of what these employees could (and could not) observe while keeping a proper lookout.  While the lookout portion of Motion 453 is allowed, the Court notes that its decision does not preclude evidence of what the employees could observe while keeping a proper lookout.

B.    HORN

Second, Defendant asks the Court to bar evidence that Defendant's employees failed to sound the train's whistle or bell.  To the extent that the whistle or bell is the same as the horn, this portion of Motion 453 is

allowed.  To the extent that they are different, it is denied.

At summary judgment, the Court held that Defendant's employees sounded the train's horn properly to warn drivers at the crossing, and therefore no breach of duty dispute existed on this issue.  <u>Opinion issued June 2, 2008</u>, at 13.  Subsequently, Plaintiffs asked the Court to reconsider its decision to allow them to admit evidence of the audibility of the horn. The Court held that on the issue of whether Defendant breached a duty, Plaintiffs never alleged that the horn was defective.  <u>Opinion issued July 2, 2008</u>, at 2.  Thus, Plaintiffs may not admit evidence on the audibility of the horn to prove that Defendant breached a duty.  The Court also noted, however, that Steven Walters' comparative fault was not at issue at summary judgment.  Thus, to permit Plaintiffs to introduce evidence of the horn on that issue, the Court had no need to reconsider its decision.  <u>Id.</u> The portion of Motion 453 regarding the train horn is allowed, and Plaintiffs may not present evidence that the train horn was objectively inaudible, but the Court notes that its decision does not prohibit Plaintiffs from introducing evidence that Steven Walters never heard a horn.

Additionally, the Court notes that its prior rulings were confined to the horn; they did not deal with the whistle or bells.  Thus, Defendant

cannot rely on prior rulings to bar evidence of the whistle or bells unless they are all the same mechanism.  To the extent that the whistle or bells are different mechanisms, Defendant's motion is denied.

C.   <u>GATES</u>

Third, Defendant asks the Court to bar any evidence or argument that it failed to install crossing gates or other additional safeguards at the crossing, or that it had a duty to install crossing gates or other additional safeguards at the crossing.  This portion of Motion 453 is allowed.  At summary judgment, the Court held that federal law preempted Plaintiffs' argument that Defendant "was required to install gates and other additional safe guards at the Crossing."  <u>Opinion issued June 2, 2008</u>, at 22. Subsequently, the Court denied Plaintiffs' reconsideration request on this issue.  <u>Opinion issued July 2, 2008</u>, at 5.  Plaintiffs may not present evidence or argument that Defendant was required to install crossing gates or other safeguards at the crossing.

Plaintiffs contend that the Court's prior rulings do not prevent them from introducing evidence that based on notice of prior activation failures, Defendant should have or could have installed "other additional safeguards."  <u>Plaintiffs' Response to Union Pacific Railroad Company's</u>

Motion in Limine Regarding Issues Disposed of by Summary Judgment or Otherwise by Court Order (d/e 481), at 2.  As the Court ruled at summary judgment, Plaintiffs may present evidence that Defendant had notice that its warning system was malfunctioning and thus had a duty to slow down train traffic or post flaggers.  Opinion issued June 2, 2008, at 22.  These are the only two other additional safeguards on which they may present evidence, however.

D.    CRTU

Fourth, Defendant asks the Court to bar any evidence, testimony, or argument regarding the CRTU.  This portion of Motion 453 is denied as duplicitous of Motion 449.  The Court's ruling regarding the admissibility of evidence regarding the CRTU is set forth in its ruling on Motion 449.

E.    VEGETATION

Fifth, Defendant asks the Court to bar any evidence, testimony, or argument regarding vegetation at the crossing.  This portion of Motion 453 is allowed.  At summary judgment, the Court concluded that Plaintiffs had presented no adequate evidence on their argument that vegetation near the crossing was so overgrown that it obscured the driver's ability to look down the track to see the train coming, in violation of federal regulations and

Defendant's own rules.  <u>Opinion issued June 2, 2008</u>, at 25.  Because Plaintiffs had no evidence on this issue, the Court entered summary judgment for Defendant on this claim.  Subsequently, the Court denied Plaintiffs' request for reconsideration and further held that because the train approached from the south and the minivan approached from the west, the condition of vegetation at the northwest and southeast quadrants of the crossing was irrelevant: "The vegetation did not obstruct Steven Walters' view."  <u>Opinion issued July 2, 2008</u>, at 4-5.

Now, Plaintiffs assert that they intend to present evidence "commenting on the correct reconstruction of this accident, which would necessarily include evidence as to at what point the locomotive being operated by Defendant would of become visible to the Plaintiffs, in light of the existing vegetation, combined with other factors which would have commanded the driver's attention, including vehicular traffic, signage, negotiating turns, the rough crossing, as well as visual obstructions surrounding the crossing."  <u>Plaintiffs' Response to Union Pacific Railroad Company's Motion in Limine Regarding Issues Disposed of by Summary Judgment or Otherwise by Court Order</u>, at 3-4.  At summary judgment, the Court concluded that the Plaintiffs' evidence regarding the state of the

vegetation at the time of the accident was improper. That evidence is still improper. If Plaintiffs have additional evidence regarding vegetation on which they intend to rely to create a reconstruction of the scene at the time of the accident, they failed to present this evidence at summary judgment. Summary judgment is not a dress rehearsal. Failure to adequately marshal evidence at summary judgment has consequences for trial. Here, one consequence is that Plaintiffs may not present evidence of vegetation at the crossing.

VI.   <u>MOTION 455</u>

In Motion 455, Defendant asks the Court to bar evidence of any accidents at the Cisco Road crossing other than the one at issue in this suit. This Motion is allowed in part and denied in part. The parties inform the Court that before the accident at issue here, three other accidents occurred at this crossing -- one in 1981, one in 1983, and one in 2002. Plaintiffs indicate no plans to introduce evidence of the 1981 or 1983 accidents. Therefore, Motion 455 is allowed to the extent that evidence of the 1981 and 1983 accidents is excluded.

Plaintiffs do intend to introduce evidence of the 2002 accident, however, and the Court finds evidence of this accident to be relevant. On

July 4, 2002, as in the 2004 accident, a northbound train collided with a westbound vehicle in the crossing.  The 2002 accident involved an Amtrak train, however, and the 2004 accident involved a freight train.  In both accidents, Plaintiffs claim that the vehicle drivers entered the crossing after observing no flashing lights.  The crossing's signal equipment was the same at the time of both accidents.  Neither party has presented the Court evidence regarding the train's speed in the 2002 accident or of the electronic recorder data for the 2002 accident.

Defendant argues that the difference in train type, the long time between these accidents, and lack of proof on speed and on warning-related electronic recorder data make these two accidents too dissimilar to allow evidence of the first.  See Mihailovich v. Laatsch, 359 F.3d 892, 911 (7th Cir. 2004) (holding that evidence of other accidents is admissible only if the accidents are substantially similar).  Evidence of substantially similar conditions can be used to establish that a railroad company had knowledge of a dangerous and hazardous condition.  Gardner v. Southern Ry. Sys., 675 F.2d 949, 952 (7th Cir. 1982).  Here, Plaintiffs claim that they will not introduce evidence of the 2002 accident to prove that Defendant had notice of dangerous conditions and should have upgraded the crossing.  Instead,

they intend to introduce evidence of this accident merely to show that the crossing experienced intermittent activation failures.  The Court finds the two accidents similar enough to allow evidence on the issue of whether the signal system previously experienced activation failures.  Thus, Motion 455 is denied to the extent that evidence of the 2002 accident is admissible on the issue of whether the crossing experienced intermittent activation failures.

VII.   <u>MOTION 457</u>

In Motion 457, Defendant asks the Court to exclude specific opinions by two of Plaintiffs' expert witnesses.  Motion 457 is denied.

Plaintiffs will call David Ault to testify regarding Steven Walters' past and future earnings.  He will not include a deduction for income taxes in his calculations, and he will assume that Walters will not work in the future.  Plaintiffs also will call Anthony Gamboa, to testify regarding Katie Petersen's past and future earnings.   Gamboa also will not include a deduction for income taxes in his calculations, and in calculating Katie Petersen's lost future wages, he will apply a zero discount rate.

Defendant asks the Court to prohibit Ault and Gamboa from offering these opinions, but these issues are all proper issues for cross-examination

and rebuttal evidence.  The Court will not exclude Ault's and Gamboa's opinions on these issues.

VIII. <u>MOTION 459</u>

In Motion 459, Defendant asks the Court to bar any evidence of complaints made by potential witnesses who assert that they have witnessed what they believe to be problems with the signal lights or horns at the crossing.  This Motion is allowed in part and denied in part.

First, Plaintiffs have indicated that they will not present witnesses who will complain about the train horns, and they do not oppose that portion of Motion 459.  Therefore, Motion 459 is allowed to the extent that no witness complaints regarding train horns will be admitted.

Second, Plaintiffs indicate that the train crossing experienced an upgrade in 1997; this system was in place at the time of the accident at issue here.  Plaintiffs indicate no plans to introduce evidence of pre-upgrade complaints.  Therefore, Motion 459 is allowed to the extent that evidence of pre-upgrade complaints will not be admitted.

On a third issue, however, Motion 459 is denied.  The Court finds evidence of witnesses' observations of the lights between the time of the 1997 upgrade and the date of the accident to be relevant to the issue of

whether this crossing experienced intermittent activation failures. Thus, the Court will not bar testimony on this issue in limine. The Court cautions, however, that such testimony is not admissible on the issue of whether Defendant disregarded such activation failures unless Plaintiffs can show that Defendant knew of the alleged failures the witnesses observed.

IX.  <u>MOTION 463</u>

In Motion 463, Defendant asks the Court to set aside that portion of Magistrate Judge Cudmore's Opinion issued January 12, 2009 (d/e 443) that imposes a $10,000.00 sanction on Defendant for discovery violations regarding the CRTU. Under Federal Rule of Civil Procedure 72(a), a district judge may modify or set aside part of a magistrate judge's pretrial order regarding nondispositive matters only if that part is clearly erroneous or contrary to law. Because Judge Cudmore's discovery sanction is not clearly erroneous or contrary to law, this Motion is denied.

Preliminarily, the Court notes that in responding to Defendant's Motion 463, Plaintiffs attached several Affidavits, to which Defendant objects. In Motion 489, Defendant asks the Court to strike these Affidavits. Because the Court agrees that these Affidavits are not relevant to the narrow issues presented in Motion 463, Motion 489 is allowed.

In his January 12, 2009, Opinion, Judge Cudmore ruled that because the CRTU recorded the same information as the primary Safetran event recorder, which Defendant concedes recorded relevant information, the CRTU also recorded relevant information. Thus, Judge Cudmore held that when Defendant omitted information regarding the CRTU in responding to the Walters' Request for Production Nos. 13 and 20, it omitted material information. Judge Cudmore noted that Defendant failed to offer any justification for its omissions and that these omissions compounded the litigation in this case. He therefore concluded that sanctions were appropriate.

Judge Cudmore's decision was not clearly erroneous or contrary to law. Defendant argues that the Court's summary judgment ruling regarding the relevance of the CRTU precludes any possibility of sanctions for omitting information regarding it. Yet, as stated above, Defendant interpreted the Court's summary judgment ruling too broadly. At summary judgment, the Court ruled only that the CRTU is irrelevant to the issue of whether the warning system was adequate. The data the CRTU recorded in the course of monitoring for various factors, including activation failures, may be relevant, and thus Defendant should not have omitted information

regarding the CRTU in responding to Plaintiffs' discovery requests.

Moreover, Judge Cudmore sanctioned Defendant for its deficient response to discovery requests.  Discovery encompasses more than just evidence that will be admissible at trial.  Fed. R. Civ. P. 26(b).  Judge Cudmore found that Plaintiffs' request was proper, and Defendant failed to respond adequately.  Plaintiffs were entitled to a complete response.  Judge Cudmore's finding that Defendant violated the rules of discovery was not clearly erroneous or contrary to law.

Defendant also argues that under Federal Rules of Civil Procedure 37(a) and 37(c), sanctions are inappropriate where a party's nondisclosure was substantially justified and harmless, or where an award of sanctions would be unjust.  Defendant has offered no justification for its omissions, however, so the Court cannot conclude that these omissions were substantially justified.  Further, given how Defendant's omissions prolonged and complicated this case -- to the point that the Court now has been forced to clarify summary judgment rulings it made regarding how Defendant actually utilized the CRTU --  the Court does not find the sanctions unjust.

THEREFORE, Motions 445, 449, 451, 453, 455, and 459 are ALLOWED in part and DENIED in part, as detailed in this Opinion.

Motions 447, 457, and 463 are DENIED.  Motion 489 is ALLOWED.

IT IS THEREFORE SO ORDERED.

ENTER:   February 25, 2009

       FOR THE COURT:

                         _____s/  Jeanne E. Scott_____
                                JEANNE E. SCOTT
                      UNITED STATES DISTRICT JUDGE